591 A.2d 985

DOROTHY LEIGHTON, PLAINTIFF–APPELLANT, v. HAROLD L. SIM, JR., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 18, 1990—Decided June 4, 1991.

Before Judges DEIGHAN, BAIME and ARNOLD M. STEIN.

*Ronald M. Gutwirth* argued the cause for appellant.

*William F. Hartigan,* Jr., argued the cause for respondent (*McLaughlin & Cooper,* attorneys; *William F. Hartigan* on the brief).

The opinion of the Court was delivered by

ARNOLD M. STEIN, J.A.D.

Plaintiff appeals the jury verdict of no cause for action and the denial of her new trial motion.

We reverse and remand for a new trial because the trial judge gave prejudicial, misleading instructions to the jury. He should not have charged the sudden emergency doctrine in this pedestrian knockdown case. There was nothing sudden about plaintiff's appearance in the roadway in front of defendant and there was no emergency to which he had to react, unless it was one created by his inattention to conditions directly in his path.

The accident happened on December 10, 1986, at about 5:50 P.M., on West Delaware Avenue in Pennington, about 200 feet east of its intersection with Route 31. The intersection is controlled by a traffic signal. The weather was clear and the road was dry. Although the accident location was not well-illuminated, there was a well-lit shopping strip on each side of the street, giving ample notice to oncoming cars of the potential presence of pedestrians in the roadway. West Delaware Avenue has two lanes, each twenty-eight feet wide. The speed limit is twenty-five miles per hour. Plaintiff was crossing West Delaware Avenue in a northerly direction, returning to her car, located in a parking lot across the street. She testified that she walked diagonally to the middle of the road where:

> I stopped, looked. I saw that the light was still red, and there was nothing coming in my direction, that is going in the easterly direction. So I proceeded to the middle and stood, while I was there in the middle and stood there.

. . . .

I looked left [easterly], the light was still red, looked right [westerly], looked left, started to walk and bang.

Defendant testified that he was traveling west on West Delaware Avenue, heading towards Route 31 at approximately twenty-five miles per hour. He was familiar with the area. He first saw plaintiff when she was twenty feet in front of his car, to the right of the center line, walking to the other side of the road and looking straight ahead. Although he slammed on the brakes he was unable to avoid striking plaintiff on the passenger side of his car. He saw her body go "up in the air" upon impact.

According to plaintiff's reconstruction expert, if defendant was traveling at twenty-five miles per hour with his headlights on, he would have clearly seen her from a distance of at least 150 feet. Allowing for a reaction time of two seconds, defendant should have been able to stop his vehicle approximately fifty feet in front of plaintiff, thereby avoiding the accident. A three-second reaction time would have enabled defendant to stop his automobile after traveling 110 feet, or forty feet in front of plaintiff.

Moreover, defendant's testimony that he saw plaintiff when she was twenty to thirty feet in front of his car and that she was tossed in the air when he struck her, would permit the jury to conclude that defendant was traveling well in excess of the twenty-five mile-per-hour speed limit.

There was ample evidence for the jury to find either or both parties inattentive and therefore negligent. That is why it was improper for the judge to give the jury a totally inapplicable sudden emergency charge, an instruction so prejudicial in this factual setting that it polluted the jury's fact-finding function.

[S]ome "emergencies" must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. Thus, under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles and persons on the highway.... [Prosser and Keeton on Torts, § 33 at 197 (5th ed. 1984), *cited with approval in Paiva v. Pfeiffer*, 229 *N.J.Super.* 276, 283, 551 *A.2d* 201 (App.Div.

1988) and *Finley v. Wiley,* 103 *N.J.Super.* 95, 103, 246 *A.*2d 715 (App.Div. 1968)].

██ A party is entitled to a sudden emergency charge only in those situations where he or she is confronted by an imminent situation over which he or she had no control, without fault on his or her part. *Roberts v. Hooper,* 181 *N.J.Super.* 474, 478, 438 *A.*2d 351 (App.Div.1981). This defendant was confronted with "no more than an everyday traffic problem for which he should have been prepared." *Finley v. Wiley, supra,* 103 *N.J.Super.* at 103, 246 *A.*2d 715. Misuse of the charge in this case, with this evidence, was highly prejudicial, "clearly capable of producing an unjust result." *R.* 2:10–2.

In *Finley* we said that

we entertain grave doubt whether a sudden emergency charge should ever be given in an ordinary automobile accident case. There is a modern view that it is argumentative, unnecessary and confusing, and should be eliminated. *Id.*

We again caution that this instruction should be given in only the most unusual circumstances. In most instances the sudden emergency charge is argumentative in its effect and unduly emphasizes one phase of the total proofs. *Paiva v. Pfeiffer, supra,* 229 *N.J.Super.* at 283–84, 551 *A.*2d 201; *Finley v. Wiley, supra,* 103 *N.J.Super.* at 103, 246 *A.*2d 715.

██ The charge contained additional error. The judge instructed the jury that in considering the effect of *N.J.S.A.* 39:3–57, requiring single-beam headlamps to be of sufficient intensity for the driver to reveal persons at a distance of at least 200 feet, "this statute can be considered by you in the *evaluation of the conduct of the defendant....*" [emphasis added]. We specifically rejected this charge in *Maini v. Hassler,* 38 *N.J.Super.* 81, 84, 118 *A.*2d 68 (App.Div.1955), when it was given in an instruction dealing with the effect of *N.J.S.A.* 39:3–60, the statute regulating use of multiple-beam headlights. The jury was entitled to consider whether defendant's failure to see plaintiff in his headlights within this statutorily-mandated 200–foot distance was evidence of his negligence.

Contrast the trial judge's treatment of the statutory duties of defendant driver with those of plaintiff pedestrian. He told the

jury that violations by her of *N.J.S.A.* 39:4–34 (in absence of crosswalk pedestrian must cross at right angles to roadway) and *N.J.S.A.* 39:4–36 (pedestrian not at crosswalk must yield right-of-way to all vehicles upon roadway) was *"evidence to be considered by you in determining whether negligence ...* has been established." [emphasis added]. Defendant had his statutory obligations evaluated in terms of his "conduct," while plaintiff's were weighed in terms of negligence. The charge heaped imbalance atop patent legal error.

Questions of negligence remain peculiarly within the jury's competence. *Benton v. Y.M.C.A,* 27 *N.J.* 67, 71, 141 *A.*2d 298 (1958); *Hambright v. Yglesias,* 200 *N.J.Super.* 392, 396, 491 *A.*2d 768 (App.Div.1985). It is not our function to weigh the evidence to rescue a legally-flawed trial. We assume that the jurors followed these improper instructions. *State v. Curcio,* 23 *N.J.* 521, 527–28, 129 *A.*2d 871 (1957); *State v. Boncelet,* 107 *N.J.Super.* 444, 454, 258 *A.*2d 894 (App.Div.1969). Plaintiff deserves a new trial, free from the taint of prejudicially incorrect jury instructions.

Reversed and remanded to the Law Division for a new trial.