269 N.J. Super. 607 (1994)
636 A.2d 117
CLAUDIA RUIZ AND ALBERTO RUIZ, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
TOYS "R" US, INC., A NEW JERSEY CORPORATION AND UNADO CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 15, 1993.
Decided January 21, 1994.
*608 Before Judges SHEBELL and LONG.
Wilson & Wilson, attorneys for appellants (Thomas A. Harley on the brief).
K. Ruth Larson, attorney for respondent Unado Corporation (Janetta D. Marbrey on the brief).
Rogan & Faugno, attorneys for respondent Toys "R" Us, Inc. (Pamela Giannotto on the brief).
*609 The opinion of the court was delivered by SHEBELL, P.J.A.D.
Plaintiffs, Claudia Ruiz and her husband, Alberto Ruiz, appeal from a jury verdict of no cause for action entered in favor of defendants, Toys "R" Us, Inc. and Unado Corporation. We reverse and remand.
Plaintiffs were married on April 21, 1990, in their home country of Argentina and were honeymooning in the United States in June 1990. During their time in New Jersey, they stayed with relatives. On June 14, 1990, plaintiffs, along with Mrs. Ruiz's sister and brother-in-law, went to Toys "R" Us, a large retail toy store, at the Bradlees Shopping Center in Union to purchase gifts for relatives in Argentina. They arrived at the store at approximately 6:30 p.m. It had rained lightly all day. Claudia, the twenty-three-year-old plaintiff, was walking in the second aisle toward the back of the store, when she slipped and fell sustaining serious permanent injuries. She had not seen anything on the floor before her fall, but thereafter she noticed there was water on the floor and she was wet. There were no signs or ropes around the water area.
After the fall, plaintiff's husband stayed with her while her brother-in-law went to get an employee from the store. Initially, a female employee came to the plaintiff and her family, but the employee was apparently unable to speak their language. Plaintiff's husband spoke to the store manager. The manager went to the spot where the water was, and upon seeing the water, he sent someone to clean it up. The manager also took information from the plaintiffs and prepared an accident report that recounted "[c]ustomer states that she slipped in a puddle of water between the back wall and [aisle] 1C." The report described the condition of the location of the accident as "water on the floor," and also stated that the nature of plaintiff's harm was "back injury." The manager submitted this report and a second computerized "general liability report" to the Toys "R" Us management on that same day.
*610 Plaintiff testified that the manager recommended that she go to the hospital and told her the store would take care of paying any hospital bills. Upon leaving the store, plaintiff received emergency treatment at Irvington General Hospital. She thereafter received medical treatment for injuries to her left knee and back. We need not detail the medical proofs presented at trial for purposes of this opinion.
Plaintiff's case included the reading of portions of the depositions of the area director of the Toys "R" Us stores and the property management director for Vornado Corporation, the parent company of Unado. The Toys "R" Us store's director disclosed detailed knowledge of the roof leakage problems. Specifically, his deposition revealed that there were more than ten times between January 1, 1990, and June 14, 1990, that there had been water leaking from the roof onto the floor. He asserted that the managers of the Toys "R" Us were responsible for making sure that water was taken off the floor.
The property management director of Vornado related in his deposition that Unado's tenant, Toys "R" Us, had made complaints about the leaking roof in the latter part of 1988. He stated that at that time Unado had hired a roofing company to make temporary repairs and was also contemplating major repairs to the roof.
The counsel for defendant Toys "R" Us also read to the jury parts of the deposition of the area store director. The director had testified in his deposition that no other customers had slipped on any water prior to plaintiff's fall. He stated that the store had a procedure put into effect to deal with the roof leaks and the water on the floor. He outlined how store personnel would check to see "if there was any leakage and if the rain occurred throughout the day, we would walk the store." He further stated that a maintenance person or an employee would mop up any water and put down wet floor signs. He claimed that the responsibility to walk the floors on days that it was raining was shared by all members of management and that other employees were also aware of the problems. He claimed that there were repairs made *611 to the roof prior to June 1990, but these were made by the landlord, not Toys "R" Us.
The director of property management for Vornado testified that his first notice of leaks in the roof was by letter from Kids "R" Us, a neighboring store, dated January 19, 1988. After being advised of the leaks, he hired a roofing contractor to make repairs on behalf of Unado. After initial roof repairs, Unado was again notified by Toys "R" Us that the roof continued to leak and Unado continued to repair the leaks as they occurred. He added that there was a time when Unado decided that the entire roof of the complex had to be replaced. The project was started, but no part of the re-roofing covering the Toys "R" Us store was begun before plaintiff's fall. Additional roof repairs were completed sometime in 1991. He identified four bills for the roof repair. One showed repairs of a portion of the old roof over the Toys "R" Us store dated June 9, 1990. The new roof over that store was not started until the later part of 1990 or early 1991.
Plaintiffs appeal the jury's finding of no negligence on the part of defendants, as well as the trial judge's denial of their motion for a new trial. Plaintiffs urge that the trial court's "charge as to actual and constructive notice was capable of producing a misconception in the mind of the jury as to the obligation of plaintiff...."
The charge in question relating to notice was as follows:
If you find that the premises were not in a reasonably safe condition, then in order to recover the plaintiff must show that either the owner or occupier knew of the unsafe condition for a period of time prior to the plaintiff's injury, sufficient to permit him in the exercise of reasonable care, to have corrected it. That's when actual notice is required. Or that the condition had existed for a sufficient length of time prior to plaintiff's injury that in the exercise of reasonable care the owner or occupier should have discovered it and thus corrected it. Now what's the difference between what we call actual notice or constructive notice? In other words, just because there's water on the floor and somebody slips on it doesn't mean that the owner is liable. The owner has to have notice of that condition, actual notice. They actually knew there was water on the floor at the time or constructive notice. That is, that the condition had existed for a sufficient length of time that they should have been aware that water would be likely to be on that floor under those circumstances at the time.

[Emphasis added.]
*612 Plaintiffs' counsel objected to this charge. At sidebar, the following took place:
THE COURT: What did I say particularly that you object to?
[PLAINTIFF'S COUNSEL]: Well, the impression I got is that they had to have constructive notice of this specific puddle. And in the context 
THE COURT: They do.
[PLAINTIFF'S COUNSEL]: Well I 
THE COURT: That's what it amounts to. Because constructive notice has to be just that. It can't deal with a specific puddle. It has to be about puddles in general and that requires that it include all of them.
[PLAINTIFF'S COUNSEL]: I agree.
THE COURT: It includes all of them, is what I am saying and I think I conveyed that to the jury. As a practical matter, I don't see how they could be confused on that.
[PLAINTIFF'S COUNSEL]: Well, you did charge that it was all puddles. It's just that my recollection of the charge in that one specific area was that it seemed to be addressed to that specific puddle as opposed to the hazard of puddles in general.
THE COURT: Well, the constructive notice does deal with a specific issue. It does deal with a specific puddle. We're talking  it's the only one we're talking about. That's the only one in issue. I may not have done it perfectly. It may have been unartful, but I think I have conveyed it sufficiently to the jury. I'm going to rely on my charge as given.
At the hearing on the motion for a new trial, the court recognized that the charge it had given regarding notice was incorrect:
In my charge and following the model charge, I believe I did indicate to the jury  I did go in, specifically go into the issue of notice, and say that notice had to be proved. I believe that was a misstatement of the law. Nevertheless, upon analyzing the whole case overall, I do not believe that was anything that had the capacity to mislead the jury.

I specifically pointed out in that portion of the charge, I believe, that here the  it was not denied by the defendants that they knew that the roof leaked when it rained. And basically notice was not an issue in the case. Defendants didn't deny that they were aware of the condition, and by inference that that would be a hazard to customers walking in the store.

So I don't believe the jury found the  that there was not notice here.
[Emphasis added.]
The trial court characterized the error as one not affecting the verdict:
There was an issue there at the outset, whether the roof leak caused the fall, and the jury could have found that it did not because credibility was an issue in this case. But after that issue, the next issue was if that was resolved in favor of the *613 plaintiff, was whether it  it was not the question of whether it was notice. That, the way this case was tried and presented to the jury, [notice] was a non-issue.

[Emphasis added.]
Upon review, a jury charge must be read as a whole to determine its overall effect. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973). All that is necessary is that the charge as a whole must be accurate. State v. Thompson, 59 N.J. 396, 411, 283 A.2d 513 (1971); Kaplan v. Haines, 96 N.J. Super. 242, 251, 232 A.2d 840 (App.Div. 1967), aff'd, 51 N.J. 404, 241 A.2d 235 (1968), overruled on other grounds, Largey v. Rothman, 110 N.J. 204, 540 A.2d 504 (1988). The ultimate issue is whether the jury was misled or confused. Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 570-71, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986).
Plaintiffs correctly state that there is no way to ascertain whether the charge relating to notice affected the jury deliberations. The issue of notice was not addressed in any of the interrogatories submitted to the jury. Therefore, there was no basis for the trial court to conclude that its charge did not mislead the jury. A court may not assume that the jurors disregarded the improper instructions. See Leighton v. Sims, 248 N.J. Super. 577, 581, 591 A.2d 985 (App.Div. 1991) (holding that prejudicial, misleading jury instructions warrant a remand for new trial).
The trial judge instructed the jury that in order to find for the plaintiffs, the defendants must have had actual or constructive notice of the specific wet spot where plaintiff slipped. This was a misstatement of law on this fact. Even taking the jury charge as a whole, it is clear that this instruction regarding the notice issue was capable of producing an unjust result.
In Bozza v. Vornado, Inc., 42 N.J. 355, 200 A.2d 777 (1964), the plaintiff, a business invitee, was injured when she slipped on the floor in the restaurant portion of a retail store. Id. at 358, 200 A.2d 777. When plaintiff was helped to her feet, she noticed the floor where she fell was sticky and slimy. Ibid. There was no evidence that defendants had actual knowledge of this condition of *614 the floor. Id. at 358-59, 200 A.2d 777. Nonetheless, our New Jersey Supreme Court held that "when plaintiff has shown that the circumstances were such as to create the reasonable probability that the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition." Id. at 360, 200 A.2d 777.
Defendant Toys "R" Us correctly points out that an important factor that the Bozza Court noted in reaching its decision was that the defendant's conduct in its operations caused the dangerous condition. Thus, defendant Toys "R" Us argues that this factor distinguishes the Bozza facts from the present matter, particularly since the nature of the business of Toys "R" Us had no nexus to the dangerous condition itself.
Notice was required in the present case because it cannot be said that either of the defendants, or their agents or employees, caused the roof to leak. However, the trial judge was correct that notice did not remain as an issue when the case was submitted to the jury. It was not required that plaintiffs show that defendants had actual or constructive notice of the specific puddle that caused plaintiff's fall because the condition of the roof created the reasonable probability that a dangerous condition would occur and both defendants knew of its condition. See Bozza, supra, 42 N.J. at 355, 200 A.2d 777. The presence of water on the floor in defendants' store reasonably could have been seen to constitute an immediate hazard and an unsafe condition.
It was a misstatement of law to require actual or constructive notice of the specific water spot, as Toys "R" Us was well aware that the roof leaked water onto the store's floor when it rained. The area store director of Toys "R" Us disclosed that the store had a procedure to deal with the problem of roof leaks and water on the floor. This confirms that it was well known that by reason of the continuing roof problems water would leak onto the floor causing a dangerous condition.
The public invited to shop at the store should not be made to bear the risk of harm that existed during the period of time that *615 might lapse until the store employees found the specific water spot. Defendants had actual notice of the continuing nature of the roof problem. Therefore, there was a reasonable probability because of "the general condition of the premises" and the "pattern of conduct or recurring incidents," "that the dangerous condition would occur." Bozza, 42 N.J. at 360, 200 A.2d 777 (citing Mahoney v. J.C. Penney Co., 71 N.M. 244, 377 P.2d 663, 673 (1962)). Plaintiff, therefore, was relieved of the requirement of proving actual or constructive notice of the specific water spot which caused her fall. Ibid.
Both Toys "R" Us and Unado Corporation should have known that the roof would probably continue to leak when it rained because a new roof was needed. It had rained all day on June 14, 1990, the date plaintiff slipped and fell. The testimony revealed that there were more than ten occasions between January 1, 1990, and June 14, 1990, that there had been water leaking from the roof onto the floor. This knowledge of the condition of the roof was enough to show that both defendants had notice of a hazardous condition. It was error to infer in the court's charge that defendants needed notice of the specific puddle of water. Notice of the condition of the roof, not notice of the specific water puddle, was sufficient to satisfy plaintiffs' burden, and as the court noted, defendants' knowledge of the condition of the roof was not in dispute. See Paramenter v. Jarvis Drug Store, Inc., 48 N.J. Super. 507, 138 A.2d 548 (App.Div. 1957).
The jury charge here was clearly capable of misleading or confusing the jury. The jury should have been able to consider defendants' duty to provide a safe premises for invitees, not in regard to the specific puddle which caused plaintiff's fall, but rather with regard to the faulty condition of the roof which rendered it likely that a dangerous condition would occur. See Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982). Further, the jury did not have to consider whether the defendants acted with reasonable care in attempting to find water on the floor from the leaking roof on the rainy day in question. See Bozza, *616 supra, 42 N.J. at 355, 200 A.2d 777. Even if Toys "R" Us had a reasonable procedure for finding water on its floor when viewed as to its duty to discover foreign substances from sources other than the defective roof, it would not be relieved from liability to customers suffering harm from water on the floor originating from the leaking roof. See Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513 (1966).
Reversed and remanded.