292 N.J. Super. 1 (1996)
678 A.2d 261
EUGENE E. ERTLE AND MICHELLE ERTLE, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
CHARLES E. STARKEY, WILLIAM V. KELLY, JAMES M. BLANEY, AND HAROLD C. WHITE, ALL INDIVIDUALLY AND D/B/A A PARTNERSHIP KNOWN AS STARKEY, KELLY, BLANEY & WHITE; GAVIN T. NATELLI; CHARLES E. STARKEY, TRUSTEE UNDER INDENTURE OF TRUST DATED JANUARY 1, 1977; CHARLES E. STARKEY AND EDWARD J. TURNBACH, INDIVIDUALLY AND D/B/A STARKEY, TURNBACH & WHITE, A PARTNERSHIP; MARY AILEEN STARKEY AND MARGARET P. TURNBACH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1996.
Decided June 13, 1996.
*3 Before Judges PETRELLA and PAUL G. LEVY.
Robert P. Clark argued the cause for appellants (Clark & Noonan, attorneys; Mr. Clark and Joseph P. Lamont, on the brief).
John T. Bazzurro argued the cause for respondents (Wolff, Helies & Duggan, and Charles Peter Hopkins II, attorneys; Mr. Bazzurro and David A. Hardaker, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiffs Eugene E.[1] and Michele Ertle appeal from a jury verdict of no cause of action in a trip and fall case. The jury returned a verdict which apportioned 80% of the negligence to plaintiff; 10% to the defendant law firm, Starkey, Kelly, Blaney and White; and, 10% to defendant Gavin T. Natelli.
On appeal, plaintiffs argue that the verdict should be set aside because (1) the judge held a post-verdict, tape-recorded conference with the jurors concerning their verdict without good cause and without the presence of the attorneys; (2) the conference with the jurors had the capacity to affect the judge's ruling on the motion for a new trial; (3) the jurors relied on extraneous facts having no basis in the evidence and which had the capacity to taint *4 their verdict; (4) the charge to the jury on the issue of actual and constructive notice was incomplete and confusing to the jury; and, (5) the verdict was against the weight of the evidence.
The incident which gave rise to the complaint occurred at about 1:30 p.m. on March 8, 1990, when Ertle, a videographer, was attempting to deliver to the Brick Township law firm of Starkey, Kelly, Blaney & White a videotape taken in a deposition conducted the previous evening. Upon entering the building owned by Natelli,[2] Ertle noticed that it had two floors, with access to each floor by way of a stairwell extending from a common landing. The law firm was located at the lower level. Entrance to the law firm was through a plate glass door displaying the law firm's name at the bottom of the stairwell. Ertle testified that he had walked down the stairway while gripping the handrail with three fingers of his right hand and holding the cassette in an envelope between his other two fingers. When he reached the last step of the stairway, Ertle claimed that he let go of the rail and found himself falling through the glass door. As a result, he received lacerations of his left hand.[3] On cross-examination, Ertle repeated that he was looking down the stairwell to see where he was going at the time of the accident. He denied having missed any steps.
A licensed professional engineer testified as an expert on plaintiff's case that he had examined and taken photographs of the stairway two days after the accident. He had found that the top step of the stairway was one and one-eighth inches below the level of the foyer and that the bottom step of the stairwell was one and one-eighth inches shorter than the riser heights of every other step on the stairway. He also noted that the glass door of the entrance to the law firm was only forty-four inches from the last *5 step of the stairwell. His examination of a piece of the plate glass door, which had been retrieved from a dumpster, revealed that it was 0.1625 inches thick and was not safety glass. He considered the glass pane of the doorway to have probably been installed at the time of the original construction of the building.[4]
In his expert opinion, Ertle's injuries were caused by the improper design and construction of the stairway and the entrance to the law firm. The expert explained that the shortfall in the height of the bottom step would have made a person fall forward. He opined that the location of the glass door only forty-four inches from the lower step would thus have led a person over forty-four inches tall "to hit that door."[5] Consequently, he concluded that the glass door should have been made of safety glass. Furthermore, in his view, these defects created "an extremely dangerous situation" that was discoverable through a reasonable inspection of the premises.
In the course of approximately six visits to the building just prior to his purchasing it in 1989, Natelli stated that he had "inspected the entire building, went through all the offices, spoke to the tenants," and discussed the sale with the sellers. At that time, he noticed nothing more than cosmetic building needs. Nor did he find any problems with the stairways either before or after he purchased the building. Natelli admitted, however, that he did not have the building inspected by anyone with respect to its safety or its structural integrity. During the trial, there was no indication that any other incidents or accidents had occurred in the area of the entrance to the law firm prior to Ertle's accident.
After the jury returned a unanimous verdict finding Ertle to have been 80% negligent, his attorney moved for a judgment *6 notwithstanding the verdict. In denying the motion, the judge commented that "[i]t's obvious that what the jury found was that the defects alleged just were not of that serious a nature compared to what they believe was just...." The judge also mentioned that he "w[ould] be chatting with the jury." The plaintiffs' attorney requested permission to listen to the judge's conversation with the jury. The judge, anticipating that the plaintiffs were going to move for a new trial, "respectfully suggest[ed] that [the attorney]" not listen. The judge offered to "have [the jury] come back in the jury box ... [for a] pretty free flow [that he] want[ed] ... on the record." The plaintiffs' attorney raised no objection to the planned discussion or his exclusion from it.
The judge brought the jurors back into the courtroom and spoke informally with them. While the judge was asking the jury members about their experience as jurors, one or more of the jurors indicated that they would have liked to have been able to ask questions during the trial, such as whether there was any other person that had fallen on the stairs at issue. One or more jurors also expressed some skepticism about the plaintiffs' case.
Plaintiffs argue that the "interview" of the jurors should not have been made in the absence of counsel. They also contend that the judge violated the Code of Judicial Conduct, Canon 3A(6) when he spoke with the jury.[6]
*7 This Canon by its terms does not apply here. The judge was neither conducting a hearing nor seeking advice on any pending legal matter. Inasmuch as the jury had completely discharged its function, the case was over as far as it was concerned. Indeed, the record of the colloquy with the jurors demonstrates that the judge was simply trying to enlighten the members of the jury as to the legal proceeding in which they had been asked to participate as part of the judicial process. Although we do not endorse the procedure used here, we can fully appreciate that in many situations this is desirable in order to help jurors to understand the nature of legal proceedings, which thereby promote their confidence in the judicial system. By no means was this, nor should it have been, a formal judicial inquiry into trial matters warranting the presence of counsel. Nonetheless, we are of the view that trial judges should refrain from such interaction in the future so as to avoid the type of allegations of judicial bias that have been made in this appeal or other claimed grounds for appeal.
In any event, the discussion by the judge with the jurors is technically not part of the trial record. Our review is necessarily limited to issues arising from objections placed on the trial record, which is not the case here. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). In fact, the absence of an objection indicates that the plaintiffs' attorney "perceived no error or prejudice" in the judge's proposal. Bradford v. Kupper Assocs., 283 N.J. Super. 556, 573, 662 A.2d 1004 (App.Div. 1995). *8 Therefore, we need not decide the issues raised by Ertle respecting the propriety of the judge's post-verdict, pre-motion discussion with the jurors.
Even so, sufficient basis exists in our cases to persuade us that we should not consider this informal discussion to have been clearly capable of producing an unjust result. See R. 2:10-2; State v. Athorn, 46 N.J. 247, 250, 216 A.2d 369, cert. denied sub nom., Athorn v. New Jersey, 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966); see also State v. LaFera, 42 N.J. 97, 107, 199 A.2d 630 (1964). We have little doubt, particularly in light of the judge's recorded colloquy with the jurors, that the discussion with the jurors had no effect on the trial judge's impartiality or his subsequent ruling with respect to the new trial motion.
Likewise, we reject the plaintiffs' alternative contention, presented for the first time on appeal, that the jury charge on constructive notice was clearly capable of producing an unjust result. See R. 2:10-2; Bradford v. Kupper Assocs., supra (283 N.J. Super. at 573, 662 A.2d 1004). The judge instructed the jury in pertinent part:
The standard of care attributable to an owner and a tenant in control of property is that they have a duty to an invitee, a person specifically at the premises to advance their business opportunities, to use reasonable care to make the premises safe. That's their basic duty. This includes the obligation to make reasonable inspections to discuss defective or potentially hazardous conditions.
Negligence can be inferred against an owner for a defect that existed prior to his time of ownership, if a sufficient period of time has elapsed before the accident so as to allow him to make inspections provided that those inspections would reasonably have led to discovery of any actual or latent defects.
In this particular case, there has not been any testimony whatsoever, and therefore you cannot find that either the owner or the tenant had any actual notice of the three types of defects claimed.... [T]here is no testimony indicating that anyone has reported to them problems with the steps, with the glass or with the distance between the bottom of the steps and the glass door.

*9 The general test of responsibility of a property owner towards an invitee is that liability will exist if and only if the owner or the party in control, knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to third parties. And that he should expect that the third party will not discover or realize the danger and he fails to exercise reasonable care to protect them against that danger.

Thus, in this matter, the issue of liability must be determined not based upon the actual knowledge of the defects [but] rather on your answer to the question, as to whether or not the owner or tenant in possession should have known of the potential hazards. As indicated previously, if an owner or tenant in control fails to inspect that property, that failure to inspect can be deemed by you to be a breach of his duty to third parties. [Emphasis supplied].
The plaintiffs assert that the trial judge erred when he emphasized that there had been no prior accidents or incidents respecting the condition of the defendants' property. They concede that such evidence is admissible to demonstrate that the defendants were not placed on notice of their property's purportedly dangerous condition. The plaintiffs argue, however, that the jury impermissibly considered the judge's statement as to the issue of the defendants' negligence.
The long established rule in this state is that evidence of other accidents may not be adduced to prove the dangerous nature of a property condition, but may be introduced, subject to an appropriate limiting instruction, in order to demonstrate that a condition has existed for such a period of time that the property owner or tenant may be deemed to have been placed upon notice of its threat. Muscato v. St. Mary's Catholic Church, 109 N.J. Super. 508, 510, 264 A.2d 74 (App.Div. 1970); Karmazin v. Pennsylvania R.R. Co., 82 N.J. Super. 123, 129, 196 A.2d 803, reh'g denied, 82 N.J. Super. 435, 198 A.2d 97 (App.Div. 1964). We find no violation of this rule in the jury charge here. To the contrary, in a manner neither misleading nor confusing the jury, the charge accurately conveyed the legal principles governing the issue of constructive notice. Ruiz v. Toys "R" Us, Inc., 269 N.J. Super. 607, 613, 636 A.2d 117 (App.Div. 1994).
When taken as a whole, a charge that clearly and properly communicates the nature of the duty of care will not serve as the *10 predicate for reversal of a jury verdict. Eden v. Conrail, 175 N.J. Super. 263, 278, 418 A.2d 278 (App.Div. 1980), aff'd as modified on other grounds, 87 N.J. 467, 435 A.2d 556 (1981). The trial judge correctly explained the defendants' duty of care applicable to this plaintiff as an invitee: to exercise reasonable care in guarding against dangerous property conditions about which the defendants knew or should have known. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433, 625 A.2d 1110 (1993); Daddetto v. Barbiera, 4 N.J. Super. 479, 481, 67 A.2d 691 (App.Div.), certif. denied, 3 N.J. 372, 70 A.2d 536 (1949).
The trial judge appropriately instructed the jury that it could not find the defendants negligent based upon their prior knowledge of the danger posed by the stairwell leading to the glass door at the entrance to their law office. Instead of misleading the jury, the judge's charge succinctly phrased the issue dispositive of the plaintiff's case: whether the defendants had negligently failed to conduct inspections of their property from which they should have known of the danger that eventually harmed the plaintiff. Cf. Model Jury Charge (Civil) § 5.24B(8) (1995).
We are satisfied, therefore, that the constructive notice charge afforded the jury a sound explication of legal principles. Cf. Hardman v. Ford Motor Co., 70 N.J. Super. 275, 288, 175 A.2d 455 (App.Div. 1961), certif. denied, 36 N.J. 299, 177 A.2d 341 (1962) (upholding jury instruction that property owner owed duty of reasonable care to maintain in safe condition its premises upon which subcontractor's employee had entered as business invitee in order to perform work thereon). There is thus no warrant for our interference with the jury's proper exercise of discretion in returning a verdict adverse to the plaintiffs' cause based upon that charge. See Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979).
Affirmed.
NOTES
[1] Reference to plaintiff in the singular or to Ertle refers to plaintiff Eugene E. Ertle. Michelle Ertle, Eugene's wife, asserted a per quod claim.
[2] The building apparently had been owned by the law firm or members thereof since its construction around 1970 and had been sold in 1989 to Natelli, a licensed real estate broker.
[3] Because the case was decided on the issue of liability, we need not discuss the evidence with respect to his injuries.
[4] According to one of the members of the defendant law firm, the glass in the doorway was the same on the date of the accident as when the building was constructed.
[5] Ertle described himself as being six feet, one and one-half inches tall and weighing approximately 270 pounds at the time of the accident.
[6] Canon 3 provides:

The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of the office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicated Responsibilities.
* * * * * * * *
(6) A judge should accord to every person who is legally interested in a proceeding, or that person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to or the subject matter of a proceeding if the judge gives notice to the parties of the person to be consulted and the nature of the advice, and affords the parties reasonable opportunity to participate and to respond. The Commentary to this Canon provides that:
[t]he proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are participants of the proceedings, except to the limited extent permitted. It does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities.
* * * * * * * *