**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2978-24

THE LAW OFFICE OF
RAJEH A. SAADEH, LLC,

    Plaintiff-Appellant,

v.

SYED AHMAD,

    Defendant-Respondent.

_____

Argued May 18, 2026 – Decided June 17, 2026

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. DC-003922-24.

Rajeh A. Saadeh argued the cause for appellant (Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh and Cynthia L. Dubell, on the briefs).

Syed Ahmad, appellant, argued the cause on appellant's behalf.

PER CURIAM

In this collection action, the Law Office of Rajeh A. Saadeh, LLC (plaintiff) appeals from three orders: a May 12, 2025 order dismissing its complaint for unpaid legal fees following a bench trial; a February 10, 2025 order denying plaintiff's motion to disqualify or recuse the assigned trial judge; and an April 25, 2025 order denying plaintiff's motion for summary judgment. The gravamen of plaintiff's complaint is that defendant Syed Ahmad, a former client, failed to pay outstanding attorney's fees and costs consistent with the parties' duly signed retainer agreement. Plaintiff sought recovery under theories of breach of contract, book account, and unjust enrichment. Having reviewed the record, we affirm the order denying plaintiff's motion for disqualification, reverse the orders dismissing plaintiff's complaint and denying summary judgment, and remand for further proceedings.

I.

Defendant retained plaintiff to represent him in a post-judgment child support matter and the parties executed a written retainer agreement on August 22, 2023, setting forth the relevant financial terms of plaintiff's representation.

The retainer listed the hourly rates for the attorneys and professionals "who may provide you with legal services," with associated hourly rates of $125 for paralegal services, $450 for services provided by plaintiff's managing member, Rajeh A. Saadeh, Esq., and $340 for Rachel L. Baxter, Esq. (Baxter)

who the parties do not dispute provided most if not all of the attorney services at issue to defendant.

The retainer agreement further states in relevant part:

> Statements: Monthly statements will be rendered to you via email for all months in which you have been provided services or for which disbursements were made on your behalf. . . . Payment is due upon your receipt of the statement, and you agree to pay promptly. A late charge of one percent (1%) per month will be due on all amounts outstanding more than thirty (30) calendar days after a statement date and every thirty (30) calendar days after a statement date until the statement and all late charges thereon have been paid in full. . . . If you fail to pay balances in accordance with this paragraph, then we reserve the right to seek and obtain security from you for your outstanding indebtedness and/or to terminate our professional relationship. If our relationship ends, we will assert a lien on any amounts recovered by you in settlement or adjudication of your case for the amount you owe. If we utilize any legal process to collect any amount outstanding, we will be entitled to recover the cost of collection, including for professional time expended by attorneys in and outside of the [plaintiff], and reasonable expenses, including but not limited to court, service, and execution cost.

Defendant paid the initial $1,500 retainer. From September 2023 through January 2024, plaintiff provided legal services primarily through attorney Baxter, as evidenced in the invoices contained in the record and defendant paid an additional $2,284.20.

3

By February 2024, plaintiff claimed defendant owed an outstanding balance of $4,589.55 in unpaid legal fees and costs.[1] The parties agreed to settle the matter for $4,000, but defendant failed to remit payment. Thereafter, plaintiff sent defendant a Fee Arbitration Pre-Action Notice in May 2024 to his home address in East Brunswick, advising defendant that he had thirty days to pursue arbitration,[2] which defendant declined to do in time.

On July 3, 2024, plaintiff filed a four-count complaint in the Special Civil Part, seeking $4,589.55 on "a certain book account," and alleging defendant failed to pay for legal services rendered pursuant to the parties' retainer agreement and "would be unjustly enriched if payment . . . is not made to [p]laintiff(s)." And, although defendant initially filed an answer and counterclaim which disputed the accuracy and propriety of plaintiff's invoices, and asserted the fees were excessive, unsupported, and unjustified, defendant later withdrew the counterclaim.[3]

---

[1] At trial, plaintiff had increased its demand to $18,333.85, inclusive of collection costs.

[2] The notice enclosed copies of the retainer agreement and itemized invoices and further advised that failure to timely pursue fee arbitration would permit plaintiff to institute collection litigation.

[3] After defendant failed to comply with discovery obligations, the court entered an order striking defendant's answer and entering default against him. The court

In November 2024, the court dismissed plaintiff's complaint without prejudice after plaintiff's principal witness Saadeh failed to appear for trial. Plaintiff then moved to both reinstate the complaint and disqualify the judge. The recusal motion included a certification filed by Cynthia L. Dubell, Esq., an attorney employed by plaintiff, which outlined allegations of biased treatment by the judge in the handling of similar fee disputes. Dubell further certified that the judge "has become substantially more hostile towards [p]laintiff and its attorneys," and "has demonstrated that she cannot be fair or impartial to [p]laintiff and its attorneys." On February 10, 2025, the Presiding Judge denied plaintiff's disqualification motion, finding no evidence of bias or impropriety, and reinstated plaintiff's complaint.

On March 10, 2025, plaintiff next moved for summary judgment and provided a certification from Dubell, billing records, invoices, and the retainer agreement. Defendant opposed summary judgment and disputed the reliability and accuracy of plaintiff's invoices for the services allegedly performed.

On April 25, 2025, the court denied summary judgment based on its finding that defendant had demonstrated genuine issues of material fact

---

later vacated the default and reinstated defendant's answer following additional motion practice and supplemental discovery proceedings, permitting the matter to proceed on the merits.

concerning plaintiff's billing practices. The court also questioned whether defendant received the fee arbitration notice, whether the invoices were fraudulently created, and whether plaintiff properly mitigated damages during settlement discussions.

On May 12, 2025, the court held a bench trial. Only Saadeh was called to testify. Plaintiff presented the testimony of Saadeh as the managing member of plaintiff's law firm, and he testified regarding the firm's representation of defendant, the execution and terms of the retainer agreement, the firm's billing practices, and the maintenance of invoices in the ordinary course of business. Plaintiff also moved the retainer agreement, invoices, and payment records into evidence as business records without objection and the court admitted the evidence.

During cross-examination, defendant questioned Saadeh regarding his personal knowledge of the work reflected in the invoices, the services allegedly performed by Baxter, and the absence of testimony from Baxter herself, who had performed most of the underlying legal work. Saadeh admitted that he did not have personal knowledge "as to what [] Baxter worked on that led to the drafting of these invoices" and further conceded that, aside from reviewing the invoices themselves, he had no independent knowledge concerning the underlying motion practice or services performed in defendant's matter.

6

Defendant did not testify, present witnesses, or introduce documentary or expert evidence.

Following trial, the court dismissed plaintiff's complaint with prejudice. The court found plaintiff failed to satisfy its burden of proof and concluded that unresolved factual disputes remained concerning plaintiff's billing practices, the reliability of the invoices, the receipt of the fee arbitration notice, and plaintiff's mitigation efforts. The court further found that the invoices did not "speak for themselves" because even Saadeh did not possess personal knowledge of the nature of the specific billing entries made and the invoices.

Plaintiff appealed from the court's February 10, 2025 order denying its motion to disqualify the judge, the April 25, 2025 order denying summary judgment, and the May 12, 2025 order dismissing plaintiff's complaint with prejudice following the bench trial. We address plaintiff's arguments seriatim.

II.

Our review of a judgment entered following a bench trial is very limited. We apply a deferential standard of review. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). When the trial judge acts as the factfinder in a bench trial, we "must accept the factual findings of" that trial judge, when such findings "are 'supported by sufficient[,] credible evidence in the record.'" State v. Mohammed, 226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424

(2014)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). For mixed questions of law and fact, the appellate court gives deference to the trial court's supported factual findings but reviews de novo the application of legal rules to those facts. State v. Pierre, 223 N.J. 560, 576 (2015).

A.

Denial of Plaintiff's Disqualification Motion

As a preliminary matter, we reject plaintiff's argument the court erred in denying his motion for disqualification of the judge.

A trial court's decision on a motion to disqualify a judge is reviewed for abuse of discretion. State v. Marshall, 148 N.J. 89, 186 (1997); State v. McCabe, 201 N.J. 34, 45 (2010). However, where the issue is whether the facts, as found, meet the legal standard for disqualification, the appellate court reviews that legal conclusion de novo. State v. Dalal, 221 N.J. 601, 607 (2015). A judge must be disqualified when the judge's impartiality might reasonably be questioned, and the objective inquiry is whether a reasonable, fully informed person would have

8

doubts about the judge's impartiality. <u>DeNike v. Cupo</u>, 196 N.J. 502, 517 (2008).

Here, plaintiff contends the judge should have been disqualified based on her conduct during the November 13, 2024 trial call, during which she dismissed plaintiff's complaint without prejudice after plaintiff appeared without Saadeh present. Plaintiff asserts the judge improperly dismissed the matter despite counsel's explanation that Saadeh mistakenly believed the proceeding had been scheduled for mediation rather than trial. Plaintiff adds that the judge engaged in objectively disparate treatment by dismissing this matter for failure to appear trial-ready while permitting "every other attorney that day" to proceed to mediation without their clients present, thereby treating plaintiff "worse than similarly-situated litigants."

After reviewing the audio recording and submissions related to the November 13 proceeding, the Presiding Judge expressly found no evidence of improper conduct. Instead, the Presiding Judge found that the judge acted in a "completely professional" and "well-reserved" manner and appropriately managed the proceeding.

Plaintiff's assertions of the judge's hostility and disparate treatment, notwithstanding, prove insufficient to establish actual bias or an objectively reasonable appearance of impropriety warranting disqualification under

DeNike, 196 N.J. at 517. As the Presiding Judge noted, the judge dismissed plaintiff's complaint for lack of trial readiness, an action which falls within the purview of judicial case management, as "[b]ias cannot be inferred from adverse rulings against a party." See Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) (citing Matthews v. Deane, 196 N.J. Super. 441, 444-47 (Ch. Div.1984)). And, we agree that nothing in the record demonstrates that a reasonable, fully informed person would question the judge's impartiality based on her comments and decision. See DeNike, 196 N.J. at 517. Additionally, the court's subsequent rulings denying summary judgment and dismissing plaintiff's complaint do not retroactively establish bias. See Marshall, 148 N.J. at 276 (quoting State v. Walker, 33 N.J. 580, 591 (1960)) ("[a]bsent a showing of bias or prejudice, the participation of a judge in previous proceedings in the case before him is not a ground for disqualification").

B.

Plaintiff's Motion for Summary Judgment

We review a trial court's order on summary judgment de novo and apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). "In ruling on a summary judgment motion, a court does not 'weigh the evidence and determine the truth of the matter'; it only 'determine[s] whether there is a genuine issue for trial.'" C.V. ex rel. C.V. v. Waterford Twp. Bd. of

10

Educ., 255 N.J. 289, 305-06 (2023) (alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). If the "competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party," the movant is not entitled to summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Globe Motor Co., 225 N.J. at 480. A court should grant summary judgment "[o]nly 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (quoting Brill, 142 N.J. at 540 (1995)) (internal quotation marks omitted).

Plaintiff maintains defendant's opposition to its motion was wholly inadequate and legally insufficient to defeat summary judgment. Plaintiff argues his evidentiary support was "thorough, complete, and conclusive with ample documentary support," including certifications demonstrating the signed agreement, itemized invoices, and proof that defendant "failed to pay" for services rendered. Plaintiff characterizes defendant's opposition as containing

"bald, foundation-free, and irrelevant statements" and "mere allegations . . . without evidential support," such as claims that the invoices were "flawed, erroneous, inflated, egregious, inaccurate, unsupported, [or] unjustifiable," none of which were supported by "a single fact or piece of evidence."

Defendant maintains that plaintiff "did not present any affidavits, or any sworn statements or any deposition [testimony] from witnesses or its employees or staff that would attest to the veracity of any of the entries created on the alleged invoice." Defendant further contends that plaintiff could not "identify which of its employees performed which tasks on the alleged invoice," could not explain "how the entries are created," and did not produce the client file or other documents that would connect the billed entries to work actually performed. Defendant maintains that factual disputes existed as to whether plaintiff notified defendant who was working on the case, whether the invoices were fraudulently created, and whether plaintiff properly mitigated damages during the June 2024 settlement discussions.

The court stated that "it is undisputed that plaintiff and defendant entered into a contract," it found that "a reasonable jury or factfinder could conclude" there was a factual dispute as to whether plaintiff breached the retainer agreement "with the manner in which it . . . billed . . . defendant in this matter."

12

We note that, defendant's opposition to summary judgment consisted primarily of argument and generalized assertions that plaintiff had "not met its burden of proof" and had "not presented any facts, affidavits, depositions, sworn statements from witnesses, or any legal authority that would support its [motion]." We further disagree with defendant's characterization of plaintiff's motion as legally insufficient and note that in failing to refute plaintiff's statements of fact, defendant's opposition was insufficient under Rule 4:46-2, which required a party opposing a motion for summary judgment to "file a responding statement either admitting or disputing each of the facts in the movant's statement." (emphasis added). And, contrary to defendant's repeated claims that plaintiff failed to provide any affidavit regarding the accuracy of its invoices, Dubell certified that Baxter provided legal services to defendant at an hourly rate of $340 and to the costs and fees incurred by plaintiff for work performed.

Based on this record, we are satisfied that, viewing the motion record in the light most favorable to non-movant defendant, the court had sufficient uncontroverted proof of plaintiff's legal services, and defendant raised no genuine issue of material fact to defeat the motion. In fact, defendant seemingly raised similar claims of fraud and unsupported billing practices that were initially in his counterclaim, which he had previously voluntarily dismissed.

13

Accordingly, plaintiff was entitled to judgment as a matter of law on liability. See Brill, 142 N.J. at 540.

C.

Dismissal of Plaintiff's Complaint

Even in the absence of the court's error in denying summary judgment, plaintiff also contends the court erred in dismissing its complaint following trial, arguing that the testimony presented at trial, together with the admitted business records, including invoices, payment history, and retainer agreement, sufficiently established defendant's liability and entitlement to the relief sought. In particular, plaintiff contends the invoices were admissible business records that "speak for themselves," and that once admitted into evidence, they constituted prima facie proof of the services rendered and fees incurred. On this point, plaintiff established the foundational requirements for admissibility through Saadeh's testimony that the invoices were maintained in the ordinary course of business, reviewed on a weekly basis, and generated contemporaneously with, or within one week of, the work performed.

The court concluded plaintiff failed to sustain its burden because "there was no one here with personal knowledge as to the work that was done on [defendant]'s case," and because Saadeh "admitted on a number of occasions that he had no -- did not have personal knowledge as to any of the work that was

14

completed on [defendant]'s case."   The court further concluded that plaintiff failed to sufficiently demonstrate "that they assisted [defendant] at each stage of his case in deciding upon a course of action" or "evaluat[ed] and weigh[ed] the costs of a particular course of action against a likely outcome and risk."

N.J.R.E. 803(c)(6) states:

> A statement contained in a writing or other record of acts, events, conditions, and, subject to [N.J.R.E.] 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make such writing or other record.

"This exception does not apply if the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy."[4]  Ibid.  However, admissibility does not compel a factfinder to accept the contents of the records as true or persuasive.  The rule expressly requires circumstances indicating trustworthiness, and the weight afforded to admitted business records remains for the trier of fact.  See Konop v. Rosen, 425 N.J. Super. 391, 403 (App. Div. 2012); Garden State Bldgs., L.P. v. First Fid.

---

[4]   Business records are addressed under N.J.R.E. 803(c)(6), and their admissibility generally requires proof that the record was made in the regular course of business, within a short time of the act or event recorded, and under circumstances indicating trustworthiness.  State v. Matulewicz, 101 N.J. 27, 29 (1985); Konop, 425 N.J. Super. at 403 (App. Div. 2012).

A-2978-24

Bank, N.A., 305 N.J. Super. 510, 524-25 (App. Div. 1997). Moreover, credibility determinations and the weight to be assigned to documentary evidence are entitled to substantial deference on appeal, particularly following a bench trial. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998); Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011).

The court gave plaintiff's business records little or no weight because, during his testimony, Saadeh acknowledged that he did not have "any personal knowledge as to what Baxter worked on that led to the drafting of these invoices," and could not otherwise explain certain invoice entries on cross-examination. Although a factfinder is not required to accept admitted business records as conclusive proof, see Konop, 425 N.J. Super. at 403, the court wholly rejected competent, credible, and largely unrefuted evidence contained in plaintiff's business records. While defendant categorized the invoices as "inflated," "unsupported," and "fraudulent," those assertions largely remained conclusory and unsupported by competent evidence in the record. See Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 98-99 (App. Div. 2014).

The court expressly found that "there was no one here with personal knowledge as to the work that was done on [defendant]'s case," and that even the managing member "could not decipher even the first entry that we were trying to go over together while we were here in court." The court also observed

16

that Saadeh "admitted on a number of occasions" that he lacked personal knowledge of the work performed, and that plaintiff had "no person with personal knowledge here" to explain how the firm assisted defendant, evaluated the costs and risks of particular actions, or connected the invoice entries to actual legal services rendered. Those findings went to the trustworthiness of the invoices, not just admissibility.

The court's reasoning, however, inferred that Saadeh was required to possess personal knowledge regarding the specific legal work reflected in the invoices, or that only the attorney who performed the work, in this case Baxter, who was by then a former employee of the firm, could testify concerning the validity of the invoices and the services rendered. However, N.J.R.E. 803(c)(6) has no such rigid requirement.[5]

Rather, a business record may be established as "trustworthy" if it is authenticated through a qualified witness familiar with the business's ordinary record-keeping practices, even if the witness lacks direct personal knowledge of the underlying events. See Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super.

---

[5] "Nothing in N.J.R.E. 803(c)(6) constrains the rule to records created by the same entity that is the proponent of the evidence at trial. Indeed, parties to litigation routinely seek the admission of documents created by other parties or nonparties under N.J.R.E. 803(c)(6)." Inv'rs Bank v. Torres, 243 N.J. 25, 48-49 (2020)

11, 18-19 (1996) ("the foundation witness generally is not required to have personal knowledge of the facts contained in the record"). While the court remained free to scrutinize the invoices and reject unsupported entries, the full dismissal of plaintiff's claims despite the existence of admitted business records, corroborating payment history, and an executed retainer agreement was not supported by sufficient credible evidence in the record. See Rova Farms Resort, 65 N.J. at 484.

Accordingly, we conclude the court mistakenly exercised its discretion and improvidently rejected the evidence of plaintiff's business records, which were admitted into evidence, without objection from defendant. Thus, although we affirm the February 10, 2025 order, we reverse and remand the denial of summary judgment and dismissal of plaintiff's complaint and order a new trial as to plaintiff's claim for damages. On remand, a different judge shall conduct, if necessary, a new or supplemental hearing on the issue of damages related to attorney's fees and costs. We reach this conclusion because the judge previously made credibility findings, and thus, it is "appropriate that the matter be assigned to a different trial court." R.L. v. Voytac, 199 N.J. 285, 306 (2009). Nothing in our opinion should be interpreted as an expression of our view on the merits of the remanded proceedings.

Because we reversed and remanded the orders denying summary judgment and dismissal of plaintiff's complaint, we need not address any of the parties' remaining arguments.

Affirmed in part and reversed and remanded in part for a proof hearing on damages. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division