825 A.2d 1128

ELIZABETH PARKS, PLAINTIFF–APPELLANT, v. PETER ROG-
ERS, HELEN ROGERS AND BRUCE ROGERS, DEFENDANTS
AND THIRD–PARTY PLAINTIFFS–RESPONDENTS, AND
JOHN DOE I (A PERSON OR ENTITY WHOSE IDENTITY IS AS
YET UNKNOWN) AND JOHN DOE II (A PERSON OR ENTITY
WHOSE IDENTITY IS AS YET UNKNOWN), DEFENDANTS
AND RICHARD REDY, THIRD–PARTY DEFENDANT.

Argued February 3, 2003—Decided June 18, 2003.

492

493

*James J. Seaman,* argued the cause for appellant (*Waters, McPherson, McNeill,* attorneys; *Patrick J. Arre,* of counsel).

*Kevin J. Conyngham,* argued the cause for respondents (*Zimmerer, Murray & Conyngham,* attorneys; *Joseph P. Kreoll,* on the brief).

The opinion of the Court was delivered by

ALBIN, J.

█ In this appeal, we revisit the scope of a homeowner's duty to protect an unsuspecting social guest of dangers on the premises. Plaintiff Elizabeth Parks was a guest at defendants' home, where she descended in darkness a deck stairway with a prematurely short banister that she claims caused her to misstep and fall, suffering serious injuries. The Appellate Division, in affirming the trial court's entry of summary judgment in favor of defendants, concluded that the indisputable facts showed that plaintiff was on notice of the condition of the handrail and, therefore, aware of the risk. We disagree that the record supports such an irrefutable conclusion. The facts are sufficiently contested that plaintiff should not be denied her day in court. We reaffirm the well-settled principle that a homeowner has a duty to warn the unwary social guest of a condition of the premises that the homeowner knows or has reason to know creates an unreasonable risk of injury.

I

As this matter comes before us on summary judgment, in presenting the facts, we must view the evidence in the light most

favorable to plaintiff and give her the benefit of all favorable inferences in support of her claim. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). On the evening of June 14, 1996, plaintiff attended a concert at the Garden State Arts Center with her date, Robert Duane, and his two friends, defendant Bruce Rogers and "Joe". Following the concert, plaintiff and Duane drove to a beach house in the Borough of Seaside Park owned by Bruce's parents, defendants Peter and Helen Rogers. Plaintiff and Duane arrived at the house sometime after 10:00 p.m. In the darkness, they walked up the two-flight wooden stairway to the second floor exterior deck, where they joined Bruce Rogers and Joe. A landing separated the two flights of stairs. The deck was "rather dark" with the only illumination coming from interior lights within the house. A lamppost at the base of the deck stairway was not lit.

Plaintiff and Duane intended to sleep at the beach house that evening. After the four conversed for approximately twenty minutes, plaintiff, feeling tired, decided to retrieve her overnight bag from the car. As she walked down the deck stairway and approached the landing between the two flights, she yelled, "Wow, it's really dark down here." No one responded by turning on any lights. Because of the darkness, she held onto the handrail to guide her way. Unknown to plaintiff, the handrail ended on the second to the last step. She had never before visited the Rogers' house and did not see during her ascent that the banister fell short of the bottom of the stairs. Not realizing that there was an additional step before she reached the ground, plaintiff lost her footing, fell, and fractured her left ankle. Immediately before she fell, she said to herself, "My goodness, where is the rest of the banister?"

Defendants Peter and Helen Rogers hired Richard Redy, a contractor, to build the stairway and deck in 1991. The deck stairway remained in continuous use through the date of the accident. In his report, plaintiff's expert enumerated seven defects in the stairway, one of which was that the banister ended

nine inches short of the final step when it should have extended at least another twelve inches beyond the final step pursuant to the State Uniform Construction Code.[1]  Of the seven defects, only the inadequate length of the handrail received the attention of the lower courts as a putative cause of plaintiff's injuries.

Plaintiff filed a complaint alleging that defendants were negligent by failing to maintain the beach house "in a reasonably safe condition" and by failing "to correct the hazardous and dangerous condition" of the stairway leading to the deck.  Plaintiff also alleged that defendant Bruce Rogers was negligent in not rendering her assistance after her fall.  Defendants filed a third-party complaint against Redy, the contractor who built the stairway. Redy did not participate in the summary judgment motion and has no role in this appeal.

The trial court granted defendants' motion for summary judgment on those counts alleging failure to maintain the premises in a reasonably safe condition and denied summary judgment to Bruce Rogers on the negligent failure to assist claim.  The trial court reasoned that defendants were not negligent as landowners for plaintiff's fall because they had no "actual knowledge" of the stairway's dangerous condition.  Plaintiff then voluntarily dismissed the failure to assist claim and appealed the grant of summary judgment.

In an unpublished, *per curiam* decision, the Appellate Division affirmed the grant of summary judgment, but on a different ground.  Unlike the trial court, the appellate panel found that "a reasonable person living in the house would have observed that

---

[1] The State Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to –141, enacted in part "to adequately protect the health, safety and welfare of the people," *N.J.S.A.* 52:27D–120e, adopted the model code of the Building Officials and Code Administrators (BOCA) International, Inc. with few modifications as the building subcode of New Jersey, *N.J.S.A.* 52:27D–123b; *N.J.A.C.* 23–3.14. Section 825.2.3 of the then BOCA subcode mandated that handrails extend at least twelve inches beyond the bottom riser of a stairway.  That requirement is now codified in section 1022.2.3 of the current BOCA subcode.

the stairway banister did not extend to the bottom of the steps by a material degree, and would have recognized the danger presented" and the "need for nighttime illumination." However, the panel concluded that plaintiff was not entitled to relief because she was aware of the two conditions she now claims were responsible for her injuries—the inadequate length of the banister and the lack of illumination. We granted plaintiff's petition for certification, 174 *N.J.* 42, 803 *A.*2d 637 (2002), and now reverse.

## II

That plaintiff was a social guest at defendants' beach house is not subject to dispute. We, therefore, begin by applying the principles of law that define the duty of a landowner to a social guest in analyzing the viability of plaintiff's claim.

The duty of an owner or possessor of land[2] to a third person coming onto his property derives from the common law. The scope of the landowner's duty is defined by that person's status as a business visitor, social guest, or trespasser. *Snyder v. I. Jay Realty Co.*, 30 *N.J.* 303, 311–12, 153 *A.*2d 1 (1959). The duty of care owed to a social guest is greater than that owed to a trespasser, but less than that owed to a business visitor.[3]  A

---

[2] Defendants Peter, Helen, and Bruce Rogers are land possessors of the subject property. The *Restatement* defines a "possessor of land" as

> (a) a person who is in occupation of the land with intent to control it or
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

[*Restatement (Second) of Torts* § 328 E (1965).]

Peter and Helen Rogers are also the landowners of the subject property. For purposes of this case, we make no legal distinction between landowner and land possessor.

[3] The duty of care owed a trespasser, "under most circumstances," is to warn "only of artificial conditions on the property that pose a risk of death or serious bodily harm." *Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 434, 625 *A.*2d 1110 (1993). The duty owed to a business visitor "encompasses the duty to conduct a

landowner is not required to provide greater safety on his premises for a social guest than he would for himself. For example, the landowner does not have a duty to scour the premises to discover latent defects. On the other hand, the social guest should be at no greater risk than the landowner, who, by reason of his knowledge of the property, has the ability to protect himself against a dangerous condition. *Hopkins, supra,* 132 *N.J.* at 433–34, 625 *A.*2d 1110; *Snyder, supra,* 30 *N.J.* at 311–12, 153 *A.*2d 1; *Berger v. Shapiro,* 30 *N.J.* 89, 97–99, 152 *A.*2d 20 (1959).

From that simple and fair-minded premise, the law places on the landowner the duty to disclose to the social guest the dangerous condition or to correct it. Thus, "the social guest ... is at least entitled to the same knowledge possessed by the host of dangerous conditions and should not be expected to assume the risk of such conditions in the absence of a warning." *Berger, supra,* 30 *N.J.* at 98, 152 *A.*2d 20. Once the proofs show that the landowner knew of a particular condition of the property, "[t]he inquiry is not whether the defendant realized the condition held any risk but whether a reasonable man would be cognizant of it." *Id.* at 100, 152 *A.*2d 20. If, however, "the guest is aware of the dangerous condition or by a reasonable use of his faculties would observe it, the host is not liable" because of the guest's failure to use due care. *Id.* at 99, 152 *A.*2d 20.

In *Berger,* this Court recognized that the *Restatement (First) of Torts* § 342 (1934) reflected "the law of this State." 30 *N.J.* at 99, 152 *A.*2d 20. Since then, the *Restatement* has been revised, *Restatement (Second) of Torts* (1965), and applied by the courts of this state. *See, e.g., Tighe v. Peterson,* 356 *N.J.Super.* 322, 326, 812 *A.*2d 423 (App.Div.) (applying *Restatement (Second) of Torts* § 342 to question of landowner liability to social guest), *aff'd,* 175 *N.J.* 240, 242, 814 *A.*2d 1066 (2002); *Vallillo v. Muskin Corp.,* 218

reasonable inspection to discover latent dangerous conditions" as well as "to guard against any dangerous conditions ... that the owner either knows about or should have discovered." *Ibid.*

*N.J.Super.* 472, 476–77, 528 *A.*2d 53 (App.Div.) (applying *Restatement (Second) of Torts* § 342), *certif. denied,* 109 *N.J.* 496, 537 *A.*2d 1287 (1987); *Giordano v. Mariano,* 112 *N.J.Super.* 311, 314–15, 271 *A.*2d 20 (App.Div.1970) (following *Berger* and applying revised § 342). Section 342 construes the duty of a land possessor to social guests: [4]

A possessor of land is subject to liability for physical harm caused to licensees [social guests] by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees [social guests], and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees [social guests] of the condition and the risk involved, and

(c) the licensees [social guests] do not know or have reason to know of the condition and the risk involved.

[*Restatement (Second) of Torts* § 342.]

The *Restatement* was revised to impose liability on the land possessor if he *"has reason to know* of the condition and should realize that it involves an unreasonable risk of harm to such licensees [social guests]." *Id.* at § 342(a) (emphasis added). The landowner is not the measure of whether a known condition of the property is dangerous. The inquiry is an objective one, whether the landowner should realize the condition posed an unreasonable risk of harm. *Taneian v. Meghrigian,* 15 *N.J.* 267, 277, 104 *A.*2d 689 (1954) (" 'If an occupier actually knows of a state of affairs on his land which a reasonable man would realize was a danger, he should not be allowed to escape from his responsibilities on the plea that he was not a reasonable man and did not realize it.' ") (quoting *Hawkins v. Coulsdon & Purley Urban Dist. Council,* 2 *W.L.R.* 122 (1954)).

We have applied those principles in previous cases to outline the scope of a landowner's duty. In *Berger, supra,* plaintiff, an elderly woman with greatly impaired vision from glaucoma, came

---

[4] The *Restatement* uses the term licensee to denote "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Restatement (Second) of Torts* § 330. As used here, a social guest is a licensee.

to visit her daughter and her son-in-law, the defendant, in their Cedar Grove home. At least one month before her mother's visit, the daughter removed two loose bricks from the ends of the top step leading to the front door. The defendant son-in-law intended to replace the bricks with iron railings, but did not do so before his mother-in-law's arrival. While opening the front door, the elderly woman stepped back into a hole created by one of the missing bricks and fell, suffering injury. *Berger, supra*, 30 *N.J.* at 93–95, 152 *A.*2d 20. We affirmed the Appellate Division's reversal of the trial court's dismissal of plaintiff's negligence action before the case was submitted to the jury. We found that it was within the peculiar province of the jury to determine whether the defendant should have known that his vision-impaired mother-in-law would not observe the missing bricks, whether defendant should have realized that the missing bricks created an unreasonable risk of a hazard, and whether the mother-in-law should have been expected to observe and avoid the hole which caused her fall. *Id.* at 99–103, 152 *A.*2d 20.

In *Tighe, supra*, this Court upheld a grant of summary judgment in favor of the defendant homeowners who were sued after the plaintiff injured himself diving into the shallow end of their pool.[5] In that case, the plaintiff had been to the pool approximately twenty times before and acknowledged that he knew the shallow from the deep end of the pool, knew better than to dive into the shallow end, and had been "horsing around." The Court found that the defendants did not have a duty to warn the plaintiff of the danger of diving into the shallow end because the plaintiff

---

[5] In *Tighe, supra*, this Court articulated the *Berger* standard in a slightly different way to address the facts of that case: "A host's duty to a social guest includes an obligation to warn of a known dangerous condition on the premises except when the guest is aware of the condition or by reasonable use of *the facilities* would observe it."— 175 *N.J.* at 241, 814 *A.*2d 1066 (emphasis added). The language used in *Tighe* was faithful to the central tenet of *Berger*. We reiterate that the language of *Berger*—"or by a reasonable use of *his faculties* would observe it"—is the governing standard to which this Court has and continues to adhere. 30 *N.J.* at 99, 152 *A.*2d 20 (emphasis added).

knew or should have known of that danger from his many times using the pool. *Tighe, supra,* 175 *N.J.* at 241–42, 814 *A.*2d 1066.

Distilling the above principles of landowner liability, the present case clearly is more like *Berger* than *Tighe.* We first must determine whether defendants knew of the condition of the property in question—the inadequate length of the handrail. Second, we must determine whether defendants should have realized that the defective handrail posed an unreasonable risk of harm to a guest unaware of the danger through the ordinary use of her faculties. In granting summary judgment, the trial court applied an incorrect standard when it found that plaintiff could not show that defendant had *actual knowledge* of the dangerous condition of the handrail. Plaintiff was only required to show that, once defendants knew or had reason to know of the defective condition of the handrail, defendants should have recognized it posed an unreasonable risk of danger to a guest and, therefore, should have disclosed or removed the danger.

The Appellate Division applied the correct standard with respect to the landowner's duty, but failed to give plaintiff the benefit of the most favorable view of the evidence in deciding the propriety of the summary judgment motion. The Appellate Division concluded that summary judgment was appropriate because plaintiff either was aware of the dangerous condition of the handrail or should have been aware "by a reasonable use of [her] faculties." In support of that holding, the Appellate Division cited two remarks by plaintiff during her deposition. Plaintiff conceded that while walking down the stairway she called out to her friends that it was "really dark." However, it was because of the darkness that plaintiff depended so completely on the handrail to guide her way down safely to street level. If a light was available, defendant Bruce Rogers failed to turn it on to illuminate the path for plaintiff. Plaintiff also acknowledged thinking to herself, immediately before she fell, "where is the rest of this banister." From plaintiff's prospective, that evidence lends support to her claim

that she was totally unaware of the defective condition of the handrail until it was too late.

■    The Appellate Division "resolved a dispute on the merits that should have been decided by a jury. It was not the court's function to weigh the evidence and determine the outcome but only to decide if a material dispute of fact existed." *Gilhooley v. County of Union,* 164 *N.J.* 533, 545, 753 *A.*2d 1137 (2000). Plaintiff was entitled to submit her case to a jury unless defendants sustained their "burden of showing clearly the absence of a genuine issue of material fact." *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 74, 110 *A.*2d 24 (1954). Viewing the evidence in the light most favorable to plaintiff, a reasonable trier of fact could conclude that defendants, Peter and Helen Rogers who owned the beach house before, during, and after the installation of the·stairway, as well as their son, defendant Bruce Rogers, knew of the inadequate length of the handrail, and that they knew the defective condition posed an unreasonable risk of injury to a social guest unfamiliar with the premises. Plaintiff visited the beach house for the first time on the evening of the accident. She did not know that the handrail did not extend the full length of the stairway because she ascended and descended the stairs in darkness. Defendant Bruce Rogers knew or had reason to know of the defective handrail and yet he failed to provide lighting or a warning to plaintiff. On the present record, he had apparent authority from his parents to use the beach house for social purposes.

### III

With genuine issues of material fact in dispute, the jury must decide whether the handrail was an inadequate length, whether defendants knew or had reason to know of the handrail's condition, whether that condition posed an unreasonable risk of harm, and whether plaintiff should have observed where the handrail ended through the reasonable use of her faculties. The judgment

of the Appellate Division is reversed, and the matter remanded for proceedings consistent with this opinion.

VERNIERO, J., dissenting.

We recently affirmed that "[a] host's duty to a social guest includes an obligation to warn of a known dangerous condition on the premises except when the guest is aware of the condition or *by reasonable use of the facilities would observe it.*" *Tighe v. Peterson,* 175 *N.J.* 240, 241, 814 *A.*2d 1066 (2002) (emphasis added). Applying that standard, I would conclude that the staircase's lack of illumination and its abbreviated banister either were known to plaintiff or were conditions that plaintiff would have observed "by reasonable use of the facilities[.]" *Ibid.* (Substituting "[her] faculties" for "facilities" in the governing standard, *see ante* at 500 n. 5, 825 *A.*2d at 1133 n. 5, does not alter my view.) Plaintiff obviously knew that it was dark. Plaintiff also presumably became acquainted with the banister when she had ascended the stairs prior to her unfortunate fall, which occurred sometime later in the evening. Finding this case ripe for disposition as a matter of law, I would affirm the judgment of the Appellate Division and, therefore, respectfully dissent.

Justice COLEMAN joins in this opinion.

*For reversing and remanding*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, and ALBIN—5.

*For affirming*—Justices COLEMAN and VERNIERO—2.