CHARTER OAK FIRE INSURANCE CO., a/s/o Milton Fabrics, Inc. and Lanca Enterprises, Inc., the Travelers Indemnity Co. of Illinois, a/s/o A.B. Shoe, the Travelers Indemnity Co. of Connecticut, a/s/o Produce Connection, Ltd., and Farmington Casualty Company, a/s/o A & R Hot Dog, Plaintiffs,

v.

NATIONAL WHOLESALE LIQUIDATORS, Vornado Realty Trust, Lodi Industries, LLC, Lodi Industries Corp., and John Does 1 through 3, Defendants.

No. 99 Civ. 5756(JSR).

United States District Court,
S.D. New York.

Aug. 29, 2003.

Michael Golden, Melissa F. Savage, Robinson & Cole LLP, New York City, for Plaintiffs.

Christopher Kendric, Ahmuty, Demers & McManus, Albertson, NY, Christopher H. Westrick, Golden, Rothschild, Spagnola, Lundell & Levitt, P.C., Bridgewater, N.J., for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Following the conclusion of testimony in a jury trial before the late Hon. Allen G. Schwartz, defendants National Wholesale Liquidators ("National Wholesale") and Vornado Realty Trust ("Vornado") timely moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 and renewed their motions following the jury's verdict in favor of plaintiffs. Judge Schwartz reserved decision on the motions and set a briefing schedule. *See* Trial Transcript ("Tr.") at 692, 892, 955, 1080. Between the completion of motion practice and oral argument, the case was reassigned to the undersigned as a result of Judge Schwartz's untimely demise.

The lawsuit concerns damage from a fire that occurred at a large retail space in Lodi, New Jersey that National Wholesale leased from the landowner, Vornado. On most of the space, National Wholesale operated a large warehouse "super-store," but it licensed four other businesses, A.B. Shoe, A & R Hot Dog, Lanca Enterprises, and Produce Connection, Ltd., (the "Licensees") to occupy the remaining portions of the premises on specific terms and conditions. In 1997, two or three unknown juveniles started a fire in National Wholesale's portion of the premises that spread and damaged property owned by the Licensees, and smoke from the fire also injured an adjoining business owner, Milton Fabrics, Inc.

The insurers for the Licensees and Milton Fabrics then brought suit as subrogees, alleging that Vornado and National Wholesale were negligent in their duties as, respectively, owners and occupiers, of land. Summary judgment was granted to Vornado on claims brought on behalf of Lanca Enterprises, *see* Memorandum Order, Apr. 4, 2002, at 10–11, and the matter otherwise proceeded to trial. Plaintiffs contended that, because of defendants' negligence, the sprinkler system in the portion of the premises controlled by National Wholesale was inadequate for its intended purpose, failed to contain the fire, and led to the destruction of their insureds' property, and the jury agreed.

*See* Tr. at 1076–78. In the pending motions, however, defendants contend that, as to the claims on behalf of the four Licensees, plaintiffs failed to make out a prima facie case of negligence, and judgment should therefore be granted as to those defendants notwithstanding the verdict.[1]

■ Under applicable New Jersey law, A.B. Shoe, A & R Hot Dog, Lanca Enterprises, and Produce Connection, who were permitted to occupy defendants' premises for their own benefit, were defendants' licensees.[2] *See Hopkins v. Fox & Lazo Realtors,* 132 N.J. 426, 625 A.2d 1110, 1113 (1993); Tr. at 918. " 'A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if [*inter alia* ] the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger . . . .' " *Parks v. Rogers,* 176 N.J. 491, 825 A.2d 1128, 1132 (2003) (quoting Restatement (Second) of Torts § 342 (1965)). The landowner is not obligated to inspect his premises for defects, but rather he is charged only with the knowledge of defects that would result from "a reasonable use of his faculties," *Berger v. Shapiro,* 30 N.J. 89, 152 A.2d 20, 25 (1959); *accord Parks,* 825 A.2d at 1132–34, or that which would be apparent to a "casual observer," *Endre v. Arnold,* 300 N.J.Super. 136, 692 A.2d 97, 100 (App.Div.1997). Defendants therefore contend that there was insufficient evidence for the jury to conclude either that a dangerous condition existed on the premises or that either defendant knew or had reason to know of such a condition.

■ As to the first prong, the jury could reasonably have concluded that the sprinklers installed on the National Wholesale premises were inadequate for the premises. Plaintiffs' expert, Richard Custer, testified that the store's inventory (composed of plastics, aerosols, wood, and paper) was extremely flammable and that the lack of "flue spaces," or gaps between the 14–foot shelves, was conducive to the rapid spread of the fire. Moreover, because of the distance between the sprinkler heads and the top of the shelves, by the time heat from the fire reached the sprinklers, activating them, the fire was already too strong for the sprinklers to contain it. And because of the lack of flue spaces, water could not

---

1. Neither defendant seeks a new trial or challenges the verdict in favor of Milton Fabrics, Inc. *See* Transcript, June 12, 2003, at 28–30, 44–45.

2. Plaintiffs now argue that they were tenants and not licensees. In addition to having waived this argument by raising it only in their post-trial motion papers, and not during the charging conferences with Judge Schwartz, or earlier, *see* Tr. at 916–22; *see also* 761–87, 892–96, 901–49, the written "license" agreements between National Wholesale and, respectively, Lanca Enterprises and Produce Connection, clearly demonstrate the intent to create a licensor-licensee relationship, *see, e.g.,* National Wholesale Ex. P ¶ 11 ("The relationship between the parties hereto is entirely contractual, and this Agreement and the relationship of the parties hereunder shall not be deemed to create a lease or any other interest in real property."); National Wholesale Ex. Q ¶ 11 ("At all times the relationship between the parties shall be solely that of a licensor and licensee and not of landlord and tenant."), and plaintiffs have pointed to no evidence suggesting a different relationship was intended in the cases of A.B. Shoe and A & R Hot Dog. *See generally Thiokol Chemical Corp. v. Morris County Bd. of Taxation,* 41 N.J. 405, 197 A.2d 176, 182 (1964) ("Whether a particular agreement is a lease [as opposed to a license] depends upon the intention of the parties as revealed by the language employed in establishing their relationship, and, where doubt exists, by the circumstances surrounding its making as well as by their course of operations under it.").

reach burning materials on the lower shelves. In so-called warehouse superstores like National Wholesale's, an "in-rack" sprinkler system, with sprinkler heads interspersed among the shelves, would have significantly reduced the risk of a destructive fire and probably would have prevented the spread of this one. Tr. at 463–76, 496–500.[3]

Nevertheless, even assuming the condition of the sprinklers created an unreasonable risk of harm, there was an insufficient evidentiary basis to conclude that either defendant knew or had reason to know of it, and thus the second prong is not satisfied. The only evidence offered by plaintiffs to show such knowledge was a series of communications concerning recommendations by Factory Mutual, an affiliate of Vornado's fire insurance carrier.[4] Vornado wrote National Wholesale, appending a list of "requirements" based on Factory Mutual's inspection of the National Wholesale premises, and requested "immediate action" with respect to the requirements. Plaintiffs' Trial Exhibit ("PTX") 8. In response, National Wholesale wrote Vornado asking for more information about the "recommended ... sprinkler changes." PTX 11; see also PTX 10. Vornado forwarded that letter to Factory Mutual, requesting more specific information about "Recommendation 92–11–1," PTX 12. An inspector at Factory Mutual replied to Vornado's request for information as follows:

> I'm going to take a personal look at this one. I would like to visit the last week in May with you or Tom Anderson. I believe we can reduce the requirements from the original recommendation (92–11–1) which calls for in-rack sprinklers in every tier. Pass this onto National (about my visit). We will have our recommendations finalized by early June. I'll call you about the date.

PTX 13; Tr. at 175. Taken together, this chain of letters (and the testimony explaining it) established that Vornado's insurer at one point recommended in-rack sprinklers.

Vornado's Vice President of Operations testified that he read and understood recommendations "concerning the sprinkler system" and the nature of National Wholesale's inventory, though he did not know whether Recommendation 92–11–1 was ever rescinded or implemented. Tr. at 169–76. National Wholesale's President testified that there were "ongoing discussions" with Vornado concerning the insurer's sprinkler recommendations, although he could not remember their specific contents. Tr. at 241–42. This was the sum total of testimony concerning the condition of the sprinklers.

The substance of Recommendation 92–11–1 never came into evidence, see, e.g., Tr. at 183–84, and nothing in the record established in more detail what the recommendations were or their bases. Most importantly, there is no indication that Factory Mutual communicated to either Vornado or National Wholesale that the sprinkler system was dangerous or would fail to control a fire. It is equally possible

---

**3.** Defendants' expert, Robert Malanga, corroborated much of Custer's testimony, going so far as to testify that in his opinion, there was not "a reasonable measure of protection" at the time the fire occurred. Tr. at 867; see also Tr. at 870–72. And although the sprinklers were code compliant, such compliance does not, of itself, establish due care as a matter of law. See Kane v. Hartz Mountain

Indus., Inc., 278 N.J.Super. 129, 650 A.2d 808, 814 (App.Div.1994); Restatement (Second) of Torts § 288C (1965).

**4.** Under the terms of its lease, National Wholesale was required to comply with any of Vornado's insurance requirements. Tr. at 157–59.

that the insurer, motivated by its financial interests, sought to reduce the risk of fire below that tolerated by a reasonable person and made excessively cautious recommendations that the defendants install in-rack sprinklers. Without knowing the standard on which the recommendations were based or the substance of the communications in which they were conveyed to Vornado and National Wholesale, there is no basis for concluding that defendants knew or had reason to know that the sprinkler system posed an unreasonable risk of harm.

"[V]ague references to ... various insurance company recommendations" do not establish knowledge of a defect by a landowner. *Alexander v. J.D. Warehouse,* 253 Neb. 153, 568 N.W.2d 892, 897 (1997). This is not a situation where a third party brings to a landowner's attention a defect that would have obvious consequences, like a leaky roof that causes puddles on the floor, *see, e.g., Ruiz v. Toys "R" Us, Inc.,* 269 N.J.Super. 607, 636 A.2d 117, 119 (App.Div.1994), nor are sprinkler systems like broken banisters, whose dangerous implications could be immediately clear, *see, e.g., Parks,* 825 A.2d at 1134. Even plaintiffs counsel conceded at one point during trial that he "would not argue that Vornado or National Wholesale knew the system was inadequate." Tr. at 781. Instead, he contended, defendants were on "notice" of a defect in the sprinkler system and should have taken "a look-see." *Id.* But this does not correctly state the duty of a landowner or occupier to a licensee, whose only obligation is to put the licensee in as good a position of knowledge and safety that he enjoys himself. *Endre,* 692 A.2d at 100. Here, there is "such a complete absence of evidence supporting" the conclusion that National Wholesale or Vornado knew or had reason to know of a dangerous condition on their property "that the jury's findings could only have been the result of sheer surmise and conjecture." *Galdieri–Ambrosini v. Nat'l Realty & Dev't Corp.,* 136 F.3d 276, 289 (2d Cir.1998).[5]

Accordingly, defendants' motions for judgment as a matter of law are granted as to claims on behalf of A.B. Shoe, A & R Hot Dog, Lanca Enterprises, and Produce Connection. Counsel are hereby instructed to convene a joint telephone conference call with Chambers to schedule the only proceeding remaining herein, to wit, a trial on damages as to the verdict in favor of Milton Fabrics.

SO ORDERED.

---

**5.** A contrary holding would discourage insurance companies from making gratuitous recommendations to their insureds, as the recommendations themselves would transform legally acceptable risks to negligent ones, thereby increasing the insurer's exposure to liability.