NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3654-15T3
DENNIS WHITE,
Administrator Ad
Prosequendum and General
Administrator of The Estate
of DAFIQ RASHEED, Deceased,

 Plaintiff-Appellant,

v.

JAMES ASTACIO, SR.,
and DORIS ASTACIO,

 Defendants-Respondents.

________________________________________________________________

 Argued May 23, 2017 – Decided July 21, 2017

 Before Judges Messano and Espinosa.

 On appeal from the Superior Court of New
 Jersey, Law Division, Atlantic County,
 Docket No. L-4771-11.

 Christopher S. Lipari argued the cause for
 appellant (Lipari & Walcoff, LLC, attorneys;
 Mr. Lipari, of counsel and on the brief).

 Chad M. Moore argued the cause for
 respondents (Hoagland, Longo, Moran, Dunst &
 Doukas, LLP, attorneys; Mr. Moore, of
 counsel; Dawn P. Marino, on the brief).

PER CURIAM
 Defendants Doris and James Astacio1 permitted Doris's sister

and brother-in-law, Diana and Jason Adams, to host a party at

their home. Dafiq Rasheed, an adult guest, drowned in their pool.

Dafiq's father, plaintiff Dennis White, brought this negligence

action against defendants, alleging a survivorship claim on behalf

of Dafiq and a wrongful death claim on behalf of Dafiq's estate.

Plaintiff appeals from an order granting summary judgment to

defendants. We affirm.

 I.

 We review the facts, drawing all legitimate inferences in

plaintiff's favor, to determine if a genuine issue of material

fact exists that precludes summary judgment. R. 4:46-2(c).

 Diana and Jason hosted a sixteenth birthday party for their

son at defendants' home. Although the complaint alleges defendants

hosted the party, plaintiff admitted in answers to interrogatories

that Diana was the host and that Doris was not present at the time

of the party. James testified he was doing yardwork in the front

of the house most of the time "because it wasn't [his] party," and

he actually left the premises at some point.

1
 Because some witnesses and parties share last names, we refer
to them all by their first names to avoid confusion. No disrespect
is intended.

 2 A-3654-15T3
 Diana testified that, as the party was ending, Dafiq decided

to go into the pool. She observed him putting on goggles, dancing

around and then jumping in, feet first, into the deep end of the

pool. Christopher Maglione, another adult guest, laughed as he

watched Dafiq dancing on the side of the pool.

 Jason was in the pool when he saw Dafiq jump in. He stated

Dafiq "started bobbing for like 30 seconds" and then grabbed

Jason's shoulder, pulling him under the water. Jason testified,

"Chris said he was in trouble" and Dafiq "went under water right

away, within a minute['s] time." Christopher jumped into the

pool, fully clothed. He brought Dafiq's head above the water, and

pulled him to the edge of the pool where Jason helped to pull

Dafiq out of the water and onto the concrete. The immediacy of

the response was confirmed by Diana, who testified she saw

Christopher jump into the pool within one minute of the time that

Dafiq had jumped in.

 Jason administered cardiopulmonary resuscitation (CPR) to

Dafiq for several minutes. James heard someone call out, "somebody

call 911." He ran to the backyard, saw Dafiq and ran inside to

call 911.

 Emergency medical technicians (EMTs) administered CPR when

they arrived, but to no avail. Dafiq was pronounced dead at the

hospital. Dr. Ian Hood, a forensic pathology expert retained by

 3 A-3654-15T3
plaintiff, issued a report in which he concluded Dafiq likely

struggled in the water for two to four minutes before dying from

"asphyxia due to drowning."

 When asked whether a person had been assigned to watch the

pool area that day, James testified: "No, not necessarily. We

just try and keep a vigilant eye on it, you know, in general."

James also testified he owned a shepherd's crook2 and kept it along

the fence near the pool on the day of the incident. At his

deposition, James was shown a photograph of the area where he

purportedly kept the shepherd's crook and acknowledged it was not

shown there. Jason could not recall whether a shepherd's crook

was present.

 Christopher testified "safety devices or flotation devices"

were affixed to a three-foot-high fence that surrounded the pool

area on the day of the incident, including a shepherd's crook. He

explained he did not grab any of the safety devices because he was

very close to the pool and going to get them would have taken

longer than jumping in. He and Jason were able to get Dafiq out

of the pool quickly, within "[f]our or five seconds," without any

of the safety devices.

2
 A shepherd's crook is a ten-to-twelve-foot pole with a loop on
the end that can be used to pull someone out of water.

 4 A-3654-15T3
 Jason testified seeing signs around the pool at the time that

said "swim at your own risk, deep end, shallow end, stuff like

that . . . I think one was no lifeguard present, swim at your own

risk."

 Plaintiff's pool safety expert, Dr. Francesco Pia, stated

"defendants owed an inherent duty to provide both a safe swimming

environment to invited pool party guests who were using their in-

ground backyard pool and to protect their invited guests from

drowning by the exercise of reasonable care." He identified pool

safety recommendations of the American Red Cross for pool safety

that defendants failed to follow, two of which are relevant for

this appeal. First, defendants did not provide a shepherd's crook,

which would have been used to pull Dafiq out when he was in

distress. Second, defendants failed to have a lifeguard or

"designated water watcher," trained in first aid, CPR, and water

safety, "whose specific responsibility is to supervise bathers

during a pool party" and who could have used the shepherd's crook

to prevent Dafiq from drowning. Dr. Pia opined that defendants'

"deviat[ions] from acceptable unguarded backyard pool party safety

standards . . . were substantial factors which contributed to

[Dafiq's] drowning."

 At his deposition, Dr. Pia testified, "[Christopher]

correctly made a determination that it would be faster for him to

 5 A-3654-15T3
hop over the fence . . . to dive into the pool and pick [Dafiq]

up as opposed to running over and getting the shepherd's crook."

He clarified that Christopher's actions were appropriate to

recover Dafiq's body even if the shepherd's crook had been present.

 II.

 The complaint alleged Dafiq was an invitee to defendants'

premises; they owed him a duty to use reasonable care to keep the

premises free from dangerous conditions; and defendants breached

that duty by allowing a dangerous condition that was the proximate

cause of Dafiq's death. The breaches of duty alleged are based

on Dr. Pia's opinion, that defendants failed: (1) to have a

shepherd's crook easily accessible while guests were in the pool,

and (2) to designate a water watcher while guests were in the

pool.

 In their motion for summary judgment, defendants argued that,

pursuant to Tighe v. Peterson, 175 N.J. 240 (2002), they did not

owe any duty to Dafiq, a social guest, to make their pool safer

for him than for themselves because he was familiar with the pool.

In opposition, plaintiff argued defendants failed to exercise

reasonable care. The Law Division granted defendants' motion,

holding,

 Defendants had no duty . . . to obtain a water
 watcher or shepherd's crook. [Dafiq] was an
 adult swimmer, who was at [d]efendants' pool

 6 A-3654-15T3
 before, and he was intelligent enough to
 notice that there was no water watcher present
 before, during or after the party. More so,
 the shepherd's crook is immaterial as [Dafiq]
 was taken out of the pool quickly by
 [Christopher].

 . . . .

 Defendants were not throwing a party, hosting
 a party, or conducting activities on the date
 in question. Rather, [d]efendants
 allowed . . . Diana . . . to use their
 backyard to host a birthday party, wherein
 Diana . . . hosted the party and invited
 guests.

 In this appeal, plaintiff argues the trial judge erred by

applying an incorrect standard of care, defendants had a duty to

exercise reasonable care when permitting a pool party to occur at

their residence, and genuine issues of fact exist, precluding

summary judgment. We have considered these arguments in light of

the record and applicable principles of law and conclude they lack

merit.

 III.

 In reviewing a summary judgment decision, we apply the same

standard as the trial court. Murray v. Plainfield Rescue Squad,

210 N.J. 581, 584 (2012). Viewing "the evidence in a light most

favorable to the non-moving party," we "determine if there is a

genuine issue as to any material fact or whether the moving party

is entitled to judgment as a matter of law." Rowe v. Mazel Thirty,

 7 A-3654-15T3
LLC, 209 N.J. 35, 38, 41 (2012) (second quotation citing Brill v.

Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). We

review questions of law de novo, and need not accept the trial

court's conclusions of law. Davis v. Devereux Found., 209 N.J.

269, 286 (2012).

 To defeat a motion for summary judgment, "[t]he opponent must

'come forward with evidence' that creates a genuine issue of

material fact." Horizon Blue Cross Blue Shield of N.J. v. State,

425 N.J. Super. 1, 32 (App. Div.) (quoting Brill, supra, 142 N.J.

at 529), certif. denied and appeal dismissed, 211 N.J. 608 (2012);

see R. 4:46-2(c). "An issue of fact is genuine only if,

considering the burden of persuasion at trial, the evidence

submitted by the parties on the motion, together with all

legitimate inferences therefrom favoring the non-moving party,

would require submission of the issue to the trier of fact." Ibid.

 Plaintiff argues the duty defendants owed to Dafiq was not

merely that of a landowner to disclose or neutralize dangerous

conditions the landowner knows or should know exist on the

property. Relying upon Hanna v. Stone, 329 N.J. Super. 385 (App.

Div. 2000), he argues defendants owed a "heightened standard" to

him "to exercise reasonable care for the protection of his/her

guest." Model Jury Charge (Civil), 5.20F(4), "Social Guest –

Defined and General Duty Owed," Note to Judge 2, "Exception as to

 8 A-3654-15T3
Host's Activities" (2014). This duty arises "[i]n cases where the

host is conducting some 'activity' on the premises at the time of

his/her guest’s presence." Ibid.

 Hanna, the case relied upon by plaintiff, instructs that

where the focus is not on a physical condition of the property but

on activities conducted thereupon, the duty to use reasonable care

falls upon "the person conducting the activity." 329 N.J. Super.

at 389. The "activity" defendants conducted was to allow their

adult relatives to host a party on their property. Although

plaintiff acknowledges that Diana and Jason were the hosts, he

contends defendants had a duty to exercise reasonable care at a

party hosted by others that required them to do the following

while guests are in the pool: (1) have a shepherd's crook easily

accessible, and (2) designate a water watcher.

 In Parks v. Rogers, the Court "revisit[ed] the scope of a

homeowner's duty to protect an unsuspecting social guest of dangers

on the premises," 176 N.J. 491, 494 (2003) (emphasis added), and

noted, "[a] landowner is not required to provide greater safety

on his premises for a social guest than he would for himself," id.

at 497-98. The landowner has "the duty to disclose to the social

guest the dangerous condition or to correct it" so the social

guest has "the same knowledge possessed by the host of dangerous

conditions." Id. at 498 (citation omitted). "If, however, 'the

 9 A-3654-15T3
guest is aware of the dangerous condition or by a reasonable use

of his faculties would observe it, the host is not liable' because

of the guest's failure to use due care." Ibid. (citation omitted).

 It is undisputed that Dafiq was familiar with defendants'

pool, having used it previously. It is also evident that he would

have been aware of the absence of a shepherd's crook or a water

watcher through "a reasonable use of his faculties." Even if we

do not impute knowledge of the dangerous condition to Dafiq,

defeating any claim that defendants are liable, plaintiff's proofs

fail to establish a genuine issue of fact as to proximate cause.

 To prove a breach of duty proximately caused an alleged

injury, a plaintiff must establish "any cause which in the natural

and continuous sequence, unbroken by an efficient intervening

cause, produces the result complained of and without which the

result would not have occurred." Townsend v. Pierre, 221 N.J. 36,

51 (2015) (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 418

(1996)). While causation is an issue ordinarily determined by the

factfinder, "in the unusual setting in which no reasonable

factfinder could find that the plaintiff has proven causation by

a preponderance of the evidence, summary judgment may be granted

dismissing the plaintiff's claim." Id. at 60.

 As we have noted, plaintiff's expert opined that it was the

breach of the duty to have a shepherd's crook and a water watcher

 10 A-3654-15T3
that proximately caused Dafiq's death. However, Dr. Pia's

testimony that the action taken by Christopher – to hop over the

fence, dive into the pool and pick up Dafiq – would have been the

correct course of action even if a shepherd's crook had been

present and would also have been faster than attempting to rescue

Dafiq with a shepherd's crook.

 Turning to the function of a water watcher, Dr. Pia stated:

 Once [Dafiq's] surface struggle started in the
 defendants' in-ground backyard pool, an
 attentive trained "water watcher" would have
 used ordinary care to rescue [him] while he
 was struggling on the surface of the water.
 The extension of the shepherd's crook by the
 "water watcher" on the pool deck of the
 defendants to the decedent would have taken
 seconds and enabled the rescue of [Dafiq]
 before his submersion.

 The record shows Dafiq was observed by the other adults

present continuously from the time he jumped into the pool and

Christopher jumped into the pool to rescue him within a minute.

CPR was administered immediately. The actions taken correspond

to Dr. Pia's description of activities a designated water watcher

would perform. And, as noted, Dr. Pia acknowledged the actions

taken would have been the correct choice even if a shepherd's

crook had been available.

 On this record, no reasonable factfinder could conclude that

the failures to have a shepherd's crook or a water watcher

 11 A-3654-15T3
constituted breaches of a duty that proximately caused Dafiq's

death and therefore, summary judgment was appropriate.

 Affirmed.

 12 A-3654-15T3