**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not constitute precedent or be binding upon any court. Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5042-18

MEGHAN CRAIG, by her
guardian ad litem,
MICHAEL CRAIG,
individually,[1]

     Plaintiff-Appellant,

v.

SCOTT MARGULIS,
DARLENE MARGULIS,
ZACHARY PIZZOLO,
individually, and DAKOTA
PIZZOLO, individually,

     Defendants-Respondents.

_____

Submitted November 8, 2021 – Decided December 17, 2021

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3740-16.

Drazin & Warshaw, PC, attorneys for appellant (Steven L. Kessel, on the brief).

---

[1] Plaintiff turned eighteen years old during the pendency of this action.

Earl R. Uehling & Associates, attorneys for respondents Scott Margulis and Darlene Margulis (Harold H. Thomasson, on the brief).

PER CURIAM

Plaintiff Meghan Craig appeals from the March 4, 2019 order granting summary judgment in favor of defendants Scott Margulis and his wife, defendant Darlene Margulis, and dismissing plaintiff's complaint against them.[2] We affirm, substantially for the reasons set forth in Judge Jamie S. Perri's comprehensive and cogent oral opinion of March 1, 2019.

We discern the following facts from the record, viewing the evidence, as we must, in the light most favorable to plaintiff, the non-moving party. Friedman v. Martinez, 242 N.J. 450, 472 (2020) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). This case arises from an incident that occurred on the evening of December 22, 2013, when plaintiff, then fourteen years old, attended a holiday party at the home of her friend, defendants' daughter. Also present at the party were defendants' son and his friends, two of whom were thirteen-year-old identical twins. Approximately ten children

---

[2] Plaintiff's claims against other named defendants were resolved or dismissed, so we refer to Scott and Darlene Margulis collectively as defendants herein. Also, because defendants share the same surname, we refer to them individually as Scott and Darlene, for the convenience of the reader. We mean no disrespect.

between the ages of eleven and fourteen were at the gathering; defendants were the only adults present.

Plaintiff and the other guests arrived at defendants' residence at approximately 7:00 p.m. The girls invited to the party exchanged gifts in the basement and ate dinner upstairs in the kitchen. After dinner, a group of children asked defendants if they could go outside and play manhunt, as the weather was unseasonably warm. In his deposition, Scott testified that he told the children "to just go outside, be careful." In their answers to interrogatories, defendants recalled telling the children to "beware of the trees and mud" in the backyard.

Defendants had a zipline in the backyard of their home. The zipline ran from a swing set's treehouse to a tree, and it was about ten feet above the ground. Scott testified that defendants received the zipline as a housewarming gift when they purchased their home sometime around 2006, but they did not know the zipline's manufacturer.[3] He also stated that defendants were unaware of any incidents involving their zipline prior to the December 22 party. Further, defendants stated in their answers to interrogatories that when they gave the children at the party permission to go outside, they "did not expect [the children]

---

[3] Plaintiff does not assert any product defect claims in this action.

A-5042-18

to play on the swings nor the zip[line], nor did [they] grant them permission" in this regard.

Initially, only the boys were ziplining, but eventually, the girls told them they, too, wanted to try to zipline. Defendants' son instructed them on how to use the zipline, told them where to step off and where the zipline ended. Plaintiff had not ziplined before she went to defendants' home.

Plaintiff testified that "[a] couple of girls went on [the zipline] and then it was [her] turn to go." She stated that defendant's son stood at the bottom and one of the twins remained at the top. Once a girl finished ziplining, defendants' son would throw the zipline back to the twin boy, who would then hand it to the next girl waiting to zipline. They told the girls where to step off and when it was time to go.

On plaintiff's first attempt at ziplining, she checked to confirm no one was walking across the path of the zipline. She started to zipline but did not pick up her feet to continue the rest of the way. She let go about four feet before the end of the zipline, and slipped into the mud, falling on her behind.

A couple of boys ziplined after plaintiff and plaintiff decided to take another turn. She ziplined for a second time without falling. She recalled a couple more children ziplined after her and she decided she wanted to zipline a

4

third time.  Plaintiff testified that as she readied herself for her third ride, there was chatter among the boys because she had not fallen the second time.  They had taken their phones out to record her and took out their phones again to record her third attempt to zipline.  She recalled the boys saying, "let's have her fall or can we see her fall again[?]" and "[d]on't worry, I am recording it."

On plaintiff's third trip, one of the twins handed her the zipline handle. After checking to ensure no one was walking across the zipline area, plaintiff stepped off the ledge.  She testified that as she proceeded, she "stepped with the one foot and [her] other foot was being held onto and [she] couldn't continue to go, so . . . [her] force was taking [her] down the line."  She stated that the one twin boy had grabbed her left foot, and when she tried to pull it from his grip to continue down the zipline, "the force brought [her] so far forward that [she] fell backwards onto [her] head."  She estimated she fell approximately six feet. Plaintiff testified that her "head and neck hit the ground first," "and then the rest of [her] body just slammed afterwards."

After her fall, plaintiff heard someone ask if she was "okay."  She also recalled she heard laughing but did not know who was laughing because she "was very dazed and out of it at that point." She stayed on the ground for "[p]robably a good minute and a half or so but then . . . was . . . helped over to

5

the swings" and sat down. Plaintiff texted her mother to ask how close she was and told her that she was hurt and wanted to go home. When plaintiff's mother arrived and spoke to Darlene, plaintiff told her mother she fell off the zipline. Darlene asked plaintiff if she was okay, and she replied she was but was ready to leave. As plaintiff drove home with her mother and another friend who attended the party, plaintiff began sobbing and told her mother someone pulled on her leg as she was ziplining and that her head really hurt.

Following the incident, plaintiff received medical treatment for head and neck pain. She subsequently experienced severe headaches and problems with her vision. The record also reflects she fainted at least ten times after the incident, had to be home-schooled for about five months, and then attended school part-time while also receiving in-home tutoring. Additionally, she quit or cut back on certain extracurricular activities.

In October 2016, plaintiff instituted litigation against defendants, alleging they negligently supervised the children at their December 22 party, and that defendants' negligence "caused [her] to fall from the[ir] zip[]line[,] striking her head and sustaining severe, debilitating injuries." After the parties conducted discovery, defendants moved for summary judgment. On March 1, 2019, Judge Perri heard argument on defendants' motion. When argument concluded, the

A-5042-18

judge rendered a decision from the bench, granting summary judgment in favor

of defendants. She prefaced her ruling by noting:

> The mere showing of an accident causing injuries sued for is not alone sufficient to authorize an inference of negligence on the part of a defendant. . . .
>
> To prevail on a negligence claim a plaintiff must prove that the defendant was negligent and that the defendant's negligence caused the injury. . . .
>
>     . . . .
>
> Where there exists a dangerous activity on a property, the property owner owes those invited onto his property a duty of reasonable care. . . .

The judge further determined:

> No evidence has been produced in this matter indicating that there was any defect in the zipline or that it was unsafe when properly used. Indeed, . . . plaintiff testified that once she understood how to use the zipline, she was able to accomplish her second ride without any problem. . . .

Additionally, Judge Perri cited to Hanna v. Stone, 329 N.J. Super. 385 (App.

Div. 2000), noting the facts of that case were "instructive" in addressing

defendants' summary judgment motion. The judge concluded:

> In this matter, the undisputed facts show that Scott and Darlene were aware that the teenagers were going into the back[yard] to play on a pleasant evening in December. But had no knowledge that the teenagers intended to use the zipline, or that one of the guests

7

A-5042-18

would attempt to cause another guest to fall off the line as a joke.

The undisputed facts show that the decision to try and interfere with plaintiff's third ride only occurred after her successful second ride, and involved the type of spontaneous behavior that occurred in Hanna where the [c]ourt specifically held that "[t]his is not a situation where a parent failed to supervise his own child, and the failure resulted in injury, or where parents permitted liquor or drugs to be served to minors." Id. [at 389-90].

Rather the [c]ourt noted [in Hanna] that there was "no precursor event that evening to put the parents on notice" of any animosity between the two boys involved in the fight. Similar[ly,] there's no evidence in this case which would suggest that the [defendants] were on notice that the teenagers intended to use the zipline, much less that one of them might engage in spontaneous behavior intended to entertain the others, but at the expense of the plaintiff.

To the contrary, the zipline had been used safely up until the point when one of the guests allegedly decided to grab [plaintiff's] leg. Plaintiff[] [has] failed to raise any issues of material facts which must be resolved by a jury. On the undisputed facts presented, the [c]ourt finds that no reasonable juror could conclude that the [defendants] had an obligation to constantly supervise teenage guests, so as to ward against one of them spontaneously engaging in negligent behavior.

On March 4, 2019, Judge Perri entered an order memorializing her March 1 opinion.

On appeal, plaintiff advances the following lone argument:

A-5042-18

The Parents Acted Unreasonably In Not Supervising A
Group of Young Children Playing for A Period of Time
In Their Backyard on a Zipline.

We disagree.

In reviewing a summary judgment motion on appeal, we employ the same standard as the trial court and review the court's grant of a summary judgment motion de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We afford no special deference to the legal determinations of the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Under this standard, we must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

In determining whether there is a genuine issue of material fact, we must "draw[] all legitimate inferences from the facts in favor of the non-moving party." Friedman, 242 N.J. at 472 (alteration in original) (quoting Globe Motor Co., 225 N.J. at 480). We must also "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed

issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "Summary judgment should be granted . . . 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"[I]t is ordinarily a plaintiff's burden to prove negligence, and . . . [negligence] is never presumed." Khan v. Singh, 200 N.J. 82, 91 (2009) (citing Hansen v. Eagle-Picher Lead Co., 8 N.J. 133, 139 (1951)). "'[A] negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages.'" Est. of Campagna v. Pleasant Point Props., LLC, 464 N.J. Super. 153, 171 (App. Div. 2020) (alteration in original) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013)).

Plaintiff has never asserted that the zipline was itself a dangerous instrumentality that required defendants exercise a greater degree of care, see Di Cosala v. Kay, 91 N.J. 159, 179 (1982) (noting a greater degree of care is required with respect to dangerous instrumentalities), nor has plaintiff ever

asserted that the presence of the zipline in defendants' backyard required them to warn plaintiff of its potential dangers, see, e.g., Parks v. Rogers, 176 N.J. 491, 494-98 (2003) (where the Court discussed duty of homeowner to warn unsuspecting social guests of condition of premises that were not observable "by reasonable use of his [or her] faculties"). Rather, plaintiff has only contended that defendants owed her a duty to supervise the activities of the children. Plaintiff has never precisely explained the extent of this duty. For example, were defendants required to sit outside and watch everything the children were doing? Or, could defendants meet their obligations by simply periodically checking on the children through the backyard window?

In Hanna, on which Judge Perri relied, one teenage guest struck another, the plaintiff, during a party hosted by the defendants' son in their home. 329 N.J. Super. at 388. The two boys had fought at school several months earlier, but this was unknown to the defendants. Ibid. In affirming the trial court's grant of summary judgment, we held there was

> no support in our case law for the proposition that parents of a minor teenager have a duty to supervise the friends of that teenager when they congregate for a social occasion at the parents' home. . . . [P]arents have no absolute duty to be constantly present among the teenagers at a social function . . . .
>
> [Id. at 389.]

11

We further noted that the defendants had not failed to supervise their own child, nor was there any "precursor event . . . that evening to put the [defendants] on notice of animosity between particular guests." Id. at 390.

Governed by these principles, we agree with Judge Perri that, consistent with the standards set forth in Hanna, no rational factfinder could find defendants breached the duty of reasonable care, nor could a reasonable jury conclude that defendants knew or should have known there was a need to exercise control over a particular guest at their children's party. We reach this conclusion because it is undisputed that plaintiff ziplined twice before she fell back on her head, and that only the spontaneous actions of another child caused plaintiff to lose her balance and fall on her third attempt to zipline.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5042-18